FIDELITY AND CASUALTY COMPANY v. LONE OAK COTTON
OIL AND GIN COMPANY.

Decided March 19, 1904.

**Insurance—Employers' Liability Policy—Employe Within Scope of Duty.**

An employer's liability policy issued by a casualty insurance company to a cotton oil and gin company indemnifies the latter against loss from liability for damages on account of bodily injuries, fatal or otherwise, suffered by any employe of the assured while on duty within the factory, shop or yards, in or during the operation of the business of the assured.    Held to cover liability for injury to a carpenter in the regular employ of the assured, received while removing some scaffolding that was no longer necessary after the plant had been installed and put in operation.

Appeal from the District Court of Hunt.    Tried below before Hon. H. C. Connor.

*Etheridge & Baker,* for appellant.

*Looney & Clark,* for appellee.

RAINEY, CHIEF JUSTICE.—On August 13, 1902, appellee sued appellant in the District Court of Hunt County for the recovery of $2247.80 upon an employer's liability policy issued by appellant to appellee, indemnifying appellee "against loss from common law or statutory liability for damages on account of bodily injuries, fatal or nonfatal, accidentally suffered within the period of this policy, by any employe or employes of the said assured, while on duty within the factory, shop or yards mentioned in the schedule hereafter given, or upon the ways immediately adjacent thereto provided for the use of such employes or the public, in and during the operation of the trade or business described in said schedule."

The said schedule referred to by that portion of the policy above quoted is as follows:

Under the head of trade or kinds of business:    "Manufacturing cotton seed oil, including refining and cotton ginning."

Under head of location of plant:    "Lone Oak, Texas."

Appellee alleged that on October 28, 1901, it had in its employ one R. L. Elliott, who was engaged in its business of manufacturing cotton seed oil, including refining and cotton ginning, and that while so employed the said Elliott was killed, and that by reason thereof his surviving wife and children recovered against appellee, in the District Court of Hunt County, a judgment for $2150, and $97.80 costs of suit, and that appellee had discharged said judgment, and that by reason of said policy appellant became liable in the amounts so expended by it in satisfaction of said judgment.

In addition to the general issue, appellant specially pleaded that said R. L. Elliott was not, at the time of his death, on duty within the factory, shops or yards of appellee, at Lone Oak, and mentioned in the

said schedule, made a part of said policy, nor while upon the ways immediately adjacent thereto, provided for the use of such employes or the public; nor while in and during the operation of the trade of refining and cotton ginning, being the business described in said schedule.

A trial before the court without a jury on April 8, 1903, resulted in a judgment in favor of appellee, and against appellant in the sum of $2337.65 and all costs of suit. From said judgment appellant duly perfected its appeal, and now here prosecutes the same.

The evidence shows that during 1901 appellee constructed a plant for ginning cotton, manufacturing cotton seed oil, etc. The construction was completed about October 1st, and the machinery was installed by the 25th of October, which completed the plant, and complete operations began, though part of the plant had been in operation since September 1st. R. L. Elliott had been employed in the construction of the plant and in installing the machinery. On October 28th, while removing some scaffolding which had been erected in a lower room of the tower, the water tank crushed through, and Elliott was killed. He was a carpenter, and a few days before his death he had been placed on appellee's list of operatives, a carpenter being necessary in the operation of the plant. His duties were to assist the superintendent in regulating the machinery and to make any changes or repairs that were necessary during the operation. This was particularly necessary at that time, as the mill was new and there were new men to break in. The water tank rested on top of the tower. It was to supply the water for the machinery and fire protection and other things, and was necessary in the operation of the plant. The tower was three stories high. The first story is where the screw in the press operates, and also to store plunder in. The second story was the lint press room. This press was not to press ginned cotton, but the lint that comes off of the cotton seed already ginned. The press used for pressing ginned cotton coming from the cotton gin had been in operation since September 1st. The machinery in the press room in this tower had been installed three or four days prior to Elliott's death. On the day of the accident they were not making oil. The machinery was being operated to fill the water tank. The scaffolding that Elliott was removing had been put in during the installation of the press, and it was needful to take it down, as it was in the way.

The sole question for determination is, whether or not Elliott, at the time he was killed, was pursuing any occupation or business covered by the policy or described in the schedule made a part thereof. The policy indemnifies "against loss from common law or statutory liability for damages on account of bodily injuries fatal or nonfatal, accidentally suffered within the period of this policy, by any employe or employes of the said assured while on duty within the factory, shop or yards mentioned in the schedule hereafter given or upon the ways immediately adjacent thereto provided for the use of such employes or

the public in and during the operation of the trade or business described in said schedule." The trade or business mentioned in said schedule is "manufacturing cotton seed oil, including refining and cotton ginning." The operations carried on are those usual to the trade or business described.

The policy also stipulated that the company shall not be liable "for any injury to or caused by any person unless his wages are included in the estimated wages," set forth in the policy, upon which the amount of the premium paid was based; and unless "he is on duty at the time of the accident in an occupation described" at the place mentioned. The policy does not cover the making of additions to or alterations in any building, but does permit "ordinary repairs."

Construing the terms of the policy most favorably to the assured of which the language is susceptible, we are of the opinion that the death of Elliott comes within its provisions. The construction of the plant was finished. It was in complete operation, and Elliott had been transferred to the operating list and his wages "included in the estimated wages" set forth in the policy. He was employed as a carpenter, which is necessary in the operation of the plant, and he was on duty engaged in a work in the time needful in the operation of the plant. Hoven v. Assurance Corporation, 67 N. W. Rep., 46.

The judgment is affirmed.

*Affirmed.*