MARYLAND CASUALTY CO. v. W. C. ROBERTSON & CO. (No. 7689.)

(Court of Civil Appeals of Texas. Dallas. April 14, 1917. Rehearing Denied May 19, 1917.)

1. INSURANCE ⬥665(7)—INDEMNITY—NOTICE OF ACCIDENT—AGENCY—EVIDENCE.

Evidence *held* sufficient to show that agent writing employé's indemnity insurance was the agent of the insurer, so that a notice to such agent of the occurrence of the injury was sufficient.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1723, 1724, 1726, 1727.]

2. INSURANCE ⬥539(3)—INDEMNITY—NOTICE OF ACCIDENT—TIME—SUFFICIENCY.

Where the employé of one taking employer's liability insurance was injured on July 15th, but made no claim until service of citation on August 25th, and the insured on August 27th gave the citation to the agent of the insurer, the requirement of the policy that notice of the accident must be given immediately was sufficiently complied with.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1329.]

3. INSURANCE ⬥539(5)—INDEMNITY—NOTICE OF ACCIDENT—DELAY.

Where employer's liability policy provided that immediate notice of accident and suit must be forwarded to the insurer, but did not expressly stipulate that a failure should work a forfeiture, delay in giving notice, if any, is no defense where the insurer received notice in time to make full investigation and suffered no loss or injury by reason of the delay.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1333, 1335, 1336.]

4. INSURANCE ⬥435—INDEMNITY—POLICY—CONSTRUCTION—"OCCUPATION CONNECTED WITH COTTON GINNING."

An employer's liability policy insuring the employer against actions resulting from injuries to employés engaged in ordinary repair and gin work, or any occupation connected with the business of cotton ginning, cotton pressing, and

bookkeeping, covers liability to an employé who was painting the roof of the gin to preserve the iron from rust, under the clause "engaged in occupations connected with the business of cotton ginning."

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1144.]

5. INSURANCE ⬤665(4)—INDEMNITY—POLICY—CONSTRUCTION.

Evidence *held* to show that an injured employé was "engaged in ordinary repair work," within meaning of employer's liability policy insuring against injuries to employés so engaged.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1722.]

6. INSURANCE ⬤151(2) — INDEMNITY INSURANCE—POLICIES—WHAT CONSTITUTES.

Where an employer's liability policy did not refer to the application, and did not recite that it was issued in consideration of the representations made in the application, such application could not be considered in construing the contract or referred to for determining the terms and conditions thereof.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 308.]

7. INSURANCE ⬤156(3) — INDEMNITY INSURANCE—PERSONS INSURED.

A policy of employer's liability insurance payable to Robertson & Co. will support suit by such company which owned all the stock in the Planters' Gin Company, and agreed to satisfy any judgment obtained by an injured employé against such company, and it paid the judgment, where pinned to the face of the policy was a rider providing that "notice is accepted that the gin plants named are owned and operated by W. C. Robertson & Co., being named and designated as the Planters' Gin Company."

Error from District Court, Hill County; Horton B. Porter, Judge.

Action by W. C. Robertson & Co. against the Maryland Casualty Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Neff & Taylor, of Waco, for plaintiff in error. Morrow & Morrow, of Hillsboro, for defendant in error.

TALBOT, J. This suit was instituted against the plaintiff in error by the defendant in error in the district court of Hill county by its original petition filed therein on July 21, 1915. The suit was based upon a certain employer's indemnity insurance contract by the terms of which the plaintiff in error agreed to indemnify the defendant in error against loss from liability imposed by law upon the assured for damages on account of bodily injury, including death resulting therefrom, suffered while this policy was in force by any employé of the assured while the said employé was engaged in the occupation connected with the business of cotton ginning, pressing, and bookkeeping, including ordinary repairs. The defendant in error alleged that while said policy was in force one of its employés was injured, and subsequently instituted suit against it, and obtained judgment for such injuries, which the defendant in error was required to pay. This suit was for reimbursement for the amount of such judgment and attorney's fees. The plaintiff in error went to trial on its first-amended original answer, and among other defenses alleged: (a) That it was not liable to the defendant in error for the reason that Ed Washington, the employé who was injured, was not engaged in the business of cotton ginning, pressing, or bookkeeping, or in doing such character of repair work as was contemplated by the policy sued on, at the time of his injuries; (b) that the defendant in error, or the assured under said policy, had failed to give notice to the plaintiff in error of the accident as required by the terms of the policy. The case was tried before the court without a jury, the trial resulting in a judgment in favor of the defendant in error for the sum of $848.48, with interest and costs. The plaintiff in error excepted to the judgment of the court, gave notice of appeal, and the case is now before this court on writ of error.

The trial court made and filed the following findings of fact:

(1) I find that the Maryland Casualty Company issued to W. C. Robertson & Co., a firm composed of W. C. Robertson and Ed Woodall, its policy No. 457, of date the 25th day of September, 1908, which said policy is attached to plaintiff's petition, and is set out in the statement of facts pages 28 to 31, and that said policy was issued through Guy C. West of Hillsboro, an insurance agent. (2) By a rider attached to said policy, the gin at Jesse, Tex., operated by the Planters' Gin Company, a corporation, was covered by said policy No. 457. (3) That during the time said policy was in existence, about the 15th day of July, 1909, Ed Washington, a negro, who was a regular employé of the Planters' Gin Company, suffered bodily injury from an accidental fall from the roof of the gin building, which resulted in the amputation of his leg above the ankle immediately thereafter. (4) The said Ed Washington had been employed to work during the ginning season which would actively begin about the 20th of August, and at the time of his injury was engaged in repairing the roof of the building, by painting the same to protect it from rusting and leaking, which said employment was proper in preparing said gin for operation during the ginning season, which must be done before active operation began, and was an ordinary repair in gin work. (5) After said accident Ed Washington filed suit in the district court of Hill county, and procured a verdict and judgment for $1,500 against the Planters' Gin Company, from which an appeal was taken to the Court of Civil Appeals for the Fifth District, and which judgment was reversed and remanded for new trial and subsequently, on the 28th of January, 1914, said Ed Washington recovered a judgment against the Planters' Gin Company for $400 and costs of suit. (6) That said judgment and costs of suit, as hereinafter set out, and attorney's fees, as hereinafter set out, was paid by W. C. Robertson & Co., a firm composed as aforesaid; that the said W. C. Robertson and Ed Woodall were the principal stockholders in the Planters' Gin Company, and that pending this suit they sold their stock in said gin property to some farmers, agreeing to hold the purchaser and property harmless from any claim on account of the suit of Ed Washington, and they in fact paid said judgment on February 1, 1914. (7) The accident to Ed Washington occurred in the latter part of July, 1909, at Jesse, about five miles from Hillsboro, where

W. C. Robertson and Ed Woodall, lived. At the time of the accident G. T. Green, who was an officer in the corporation and manager of said gin, was present, but he failed to notify either W. C. Robertson or Ed Woodall of the accident, until W. C. Robertson called him on the telephone from Hillsboro; that the said W. C. Robertson and Ed Woodall had no knowledge of the accident until the time when W. C. Robertson called G. T. Green over the phone, as above mentioned; that the said W. C. Robertson called G. T. Green and learned of the accident about five minutes after he had heard that there had been an accident, and within ten minutes thereafter he called Guy C. West on the telephone, and told him of the accident; that it was something like four or five days or a week after the accident that G. T. Green was called up by W. C. Robertson, as aforesaid. (8) Guy C. West & Co., of which Guy C. West was manager, were the parties through whom the policy in this case was issued, and the general agents for defendant expected Mr. West to give them notice after he learned anything about the accident. (9) W. C. Robertson & Co., were served with citation in the suit of Ed Washington against them on the 25th day of August, 1909, and through their attorneys, Morrow & Smithdeal, they notified Guy C. West & Co., by letter of date August 27, 1909, of the filing of the suit and the serving of citation, sending the citation with the letter, which letter and citation was immediately sent to George Willig & Co., general agents for the Maryland Casualty Company, at Waco, by Guy C. West. And Guy C. West had previously, by letter dated August 25th, notified the general agents aforesaid of the report of the accident. (10) Mr. George Willig, the general agent aforesaid, upon receiving the letter and citation from Guy C. West & Co., dated August 25, 1909, turned the matter over to Messrs. Baker & Baker, as attorneys for the company. J. W. Baker, of that firm, came from Waco to Jesse and Hillsboro on the 29th and 30th of August to investigate the claim. Before coming to Hillsboro, John W. Baker and his brother, Waller, talked the matter over, and determined that, in their opinion, the Maryland Casualty Company was not liable on the policy because of the want of notice in what they deemed sufficient time. (11) The Maryland Casualty Company denied liability under its policy, and refused to defend the suit; and W. C. Robertson & Co. employed Messrs. Morrow & Smithdeal to defend the suit at the agreed fee of $250, which was reasonable, and they paid $125 of same on the 28th day of December, 1909, and the balance during the year 1910. (12) The first judgment for $1,500 was obtained on the 20th day of September, 1909, after a trial, and in order to appeal the case it was necessary to pay the stenographer's fee for getting up the statement of facts, of $9, which was paid on December 1, 1909, by the plaintiff. (13) In the case court costs to the extent of $61.23 were charged against W. C. Robertson & Co., and the same were paid on July 10, 1914. (14) In the policy of insurance sued upon the defendant agreed to defend all suits and pay all expenses. (15) W. C. Robertson and Ed Woodall and G. T. Green stood in readiness to and offered to assist in investigating the claim and the accident, but defendant, upon denial of liability, made no further investigation of the facts than to talk to G. T. Green and W. C. Robertson. At all times after the accident, and up to and after the time of the first trial of the case, in September, 1909, all the witnesses to the accident were at Jesse and Hillsboro, in Hill county, Tex., and easily accessible. (16) The defendant in coming to Hillsboro did so in obedience to a general custom to investigate all accidents claimed to be covered by policies it issued, and did not undertake to consult the various witnesses to the accident; and as a basis for denying liability in no wise considered the question of whether it was hurt by any delay in receiving notice of the accident, relying rather upon the letter of their contract, which, as they interpreted it, required immediate notice of the accident, and upon the fact that such immediate notice had not, in their opinion, been given.

The policy in question provides:

"Immediate notice of any accident and of any suit resulting therefrom, with every summon or other process, must be forwarded to the home office of the company, or to its authorized representative; the company will investigate all accidents, and defend all suits of which such notices are given to it, and pay all judgments recovered against the assured in such suits up to said limits."

[1] The first and second assignments of error are, in effect, that the court erred in its eighth finding of fact, wherein the court found that "Guy C. West & Co., of which Guy C. West was manager, were the parties through whom the policy in this case was issued, and the general agents for the defendant expected Mr. West to give them notice after he learned anything about the accident." The contention under these assignments is that "the finding is not only unsupported by any evidence, but is contrary to and in conflict with the overwhelming preponderance of the evidence, and, being upon a material fact in the case, is prejudicial error." The evidence is sufficient, in our judgment, to show that Guy C. West was such an agent or representative of the plaintiff in error as that notice to him of the accident in question satisfied the demand of the policy sued on in that particular. It appears, as we gather from the testimony, that Guy C. West, of the firm mentioned, wrote the policy sued on as agent for the plaintiff in error, that his name was placed on the back of said policy as such agent, that he had the plaintiff in error on his list in whom he might write or take applications for insurance, and the assured only knew him in the transaction. It further appears that the application for the policy was taken and signed by Guy C. West & Co. as subagents; that they collected the premium therefor, and delivered the policy to the assured; and that the general agents, George Willig & Co., of Waco, Tex., expected the said subagent to report notice of any accident covered by the policy. In this connection we quote in part the testimony of Guy C. West, of the firm of Guy C. West & Co., and George Willig, plaintiff in error's general agent. Mr. West said:

"I know about this policy here; I had something to do with the issuance of it. This label on the back, 'Guy C. West & Company Insurance,' is my label. I took the application for that policy. I don't know how long I continued that connection with the Maryland Casualty Company. I have had some little business with them for probably fifteen years. I think I was taking applications for insurance in July of 1909 and August of 1909."

He further said:

"I suppose that I collected the premiums on this policy. There are a great many of those policies, and I don't say that I remember specifically about that one, but I feel that I did."

Mr. Willig, after stating that he never gave Mr. West authority or instructions to transmit notices of accidents occurring to people that were insured under policies written by the plaintiff in error, said:

"He was never employed on a salary to act. We received business from him; he was a representative to that extent. I received this policy from him, and I won't state positively that we did not possibly receive some other policy. * * * The fact of the business is, under that transaction, I should think Mr. West would give us notice if he had learned anything about an accident, whether he had learned it from them or not. I don't think there is anything extraordinary in the fact that W. C. Robertson & Co. went to him to notify him; I would expect it."

If, therefore, it was essential to the right of the defendant in error to recover in this case that he show a compliance with the provision of the policy sued on with respect to notice of the accident in question, prior to the service of citation in the suit, and that such compliance depended upon showing that Guy C. West or Guy C. West & Co., was an agent or representative of the plaintiff in error upon whom such notice could be served, then we think the evidence under the statute referred to was sufficient to warrant the conclusion, as reached by the trial court, that such agency existed.

The evidence was sufficient to justify the court's finding that the assured gave notice to Guy C. West of the accident to Washington, the injured employé, in four or five days or a week after it occurred, and the third assignment of error questioning such finding will be overruled.

[2] But the defendant in error contends, in reply to the plaintiff in error's seventh assignment of error, which asserts that the trial court erred in his conclusion of law, "that notice within the terms of the policy was given the Maryland Casualty Company"; that the requirement of the policy as to notice of the accident was fully complied with by the notice given at the time of the service of citation. This seems to be the correct view of the matter. The undisputed evidence shows that the suit of the injured employé, Ed Washington, against the Planters' Gin Company, was filed on August 25, 1909; that the citation issued in said suit and served on said gin company was handed to Guy C. West on the 27th day of August, and by him immediately sent to George Willig, general agent of the plaintiff in error, at Waco; that it was received by Willig and Mr. Baker, attorney for the company sent to investigate. The court's findings upon this phase of the case are in accordance with the statement of the testimony. We have found no testimony in the record showing a presentation of Ed Washington's claim to the assured prior to the institution of his suit and service of citation. The question under consideration, in very much the same form as presented here, arose in the case of Grand Rapids Electric Light & Power Co. v. Fidelity & Casualty Co., 111 Mich. 148, 69 N. W. 249, and it was there held that, under a clause in an employer's liability policy, which extended the insurance to injuries caused to third persons, as in the present case, and provided that the assured, should give immediate notice in writing of such accident or claim, the assured need not give notice until after a claim for damages has been presented against it by the person injured. To the same effect is the holding of the Supreme Court of Minnesota in Anoka Lumber Co. v. Fidelity & Casualty Co., 63 Minn. 286, 65 N. W. 353, 30 L. R. A. 689.

[3] Again, the policy in the case, while it does provide that immediate notice of any accident and of any suit resulting therefrom, must be forwarded to the home office of the insurance company, or to its authorized representative, does not expressly stipulate that a failure shall work a forfeiture, and the delay, if any, shown, should constitute no defense to this action, since it appears, we think, that the plaintiff in error received notice in time to make a full investigation, and it does not appear that it has suffered any loss or injury by reason of the delay. Hope Spoke Co. v. Maryland Casualty Co., 102 Ark. 1, 143 S. W. 85, 38 L. R. A. (N. S.) 62, Ann. Cas. 1914A, 268.

The fourth and fifth assignments of error raise the same question and are presented together. The contention is that the court erred in its fourth finding of fact, which is as follows:

"The said Ed Washington had been employed to work during the ginning season, which would actively begin about the 20th of August, and at the time of his injury was engaged in repairing the roof of the building by painting the same to protect it from rust and leaking, which said employment was proper in preparing said gin for operation during the ginning season, which must be done before active operations begun, and was an ordinary repair in gin work."

It is claimed that this finding of the court is error,

"because the undisputed evidence in this case shows that the negro at the time and place in question was engaged in the painting of a certain corrugated iron roof for the purpose of preserving same only, and that the undisputed evidence and all the evidence was to the effect that such a roof should and would have properly been painted when new, and that there was no defect therein to repair; and because all the evidence and the undisputed evidence shows that his work was not pressing or ginning cotton, or bookkeeping, or making ordinary repairs as contemplated by the terms and provisions of the policy sued on, and such finding is therefore unsupported and unwarranted by the evidence and in direct conflict therewith."

The policy indemnified the assured against—

"loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered while this policy is in force by any employé or official, or employés and officials, of the assured, while the said employés or officials are engaged in the occupations connected with the business of cotton ginning, pressing, and bookkeeping, including ordinary repairs

when made by the regular employés of the assured."

[4, 5] This language of the policy insured against injuries to employés of the assured not only while engaged in ordinary repair and gin work, but while "engaged in occupations connected with the business of cotton ginning, cotton pressing, and bookkeeping." If, therefore, it could be said that the injured employé, Ed Washington, at the time he received his injuries, was not engaged in ordinary repair work, within the meaning of the policy, still it occurs to us that at such time he was engaged in an occupation connected with the business of cotton ginning. But we believe the evidence shows that the work being done by Washington was repair work within the terms of the policy. The principal testimony bearing upon the character of work Washington was doing at the time he fell from the roof of the house and was injured is that of G. T. Green. This witness, in this connection, testified:

"I remember the occasion of Ed (Washington) getting hurt down there at the gin. * * * At that time I had him painting the roof of the gin. My object in painting the roof of the gin was to preserve it. It was a painted, corrugated iron roof, and it is necessary that we paint those roofs every two or three years in order to preserve them, in order to keep holes from coming in them. Part of the roof was becoming in holes, and I had had a man up there on the west end of the roof painting and patching it. * * * After the ginning starts you do not then have time to work on the roof or paint it. * * * Ed was on the east end and painting that part of the roof. At that time we had been at work around the gin there for about three or four weeks, piping, doing general repair work, unloading coal, and painting the gin roof. We were doing this repair work around the gin in order to get the gin in proper running order for the season, which was necessary. The ginning season in this country usually begins about the 20th of August, hardly ever later than the 20th of August or before the 15th. It is absolutely necessary that you repair a gin before you begin to operate it, because at the end of every season, when you close down, the gin has then run to its limit—that is, just about its limit—unless it has repairs, and you have got to repair it. In repairing our gin down there in 1909, in my judgment, it was absolutely necessary that we do something to the roof."

The trial court correctly held that Washington, at the time he fell from the roof, was painting the same to protect it from rusting and leaking, and that such painting constituted "an ordinary repair in gin work." The word "repairs" is defined in Bouvier's Law Dictionary, Rawle's Third Revision, in part as follows: "That work which is done to property to keep it in good order." Fidelity & Casualty Co. v. Lone Oak Cotton Oil & Gin Co., 35 Tex. Civ. App. 260, 80 S. W. 541; Hoven v. Ass. Corpor., 93 Wis. 201, 67 N. W. 46, 32 L. R. A. 388.

[6] The policy of insurance sued on does not refer to the application therefor; is not in terms made a part of the contract; it does not recite that it was issued in consideration of the representations made in the application, but solely in consideration of the pre-

mium paid. These things being true, the application is not to be considered in construing the contract or referred to in any wise for determining the terms or conditions thereof. Merchants' Ins. Co. v. Dwyer, 1 Posey, Unrep. Cas. 441; Queen Ins. Co. v. May, 35 S. W. 829; Goddard v. Ins. Co., 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1. If, however, the application for the insurance in the present case should be looked to for determining the contract of the parties, we think there is nothing in it that would require a different conclusion from the one we have reached in reference to the nature of the repairs Washington was making when injured.

The next contention of the plaintiff in error is that "the court erred in its first conclusion of law," which is as follows:

"I conclude that under the policy the accident to Ed Washington was covered by the policy, and that the Maryland Casualty Company are bound to hold W. C. Robertson & Co. harmless from the payment of the judgment obtained and of the costs and expenses, including attorney's fees incurred, together with interest on said several items from the times of payment at the rate of six per cent. per annum."

It is asserted that this conclusion of the court is error, because,

"under the undisputed evidence in the case, the plaintiff in error was not obligated, by the terms of the contract in suit, to pay W. C. Robertson & Co., or to hold them harmless from the judgment obtained against the Planters' Gin Company by Ed Washington,"

for that the undisputed evidence shows that at the time of the accident to Washington he was employed by and working for the Planters' Gin Company, a Texas corporation, and that liability on account of the accident, if any, as a matter of law fell upon said corporation. The main proposition advanced under this assignment is:

"A liability policy which by its terms agrees. to indemnify a partnership from liability imposed by law upon the partnership for damages on account of bodily injuries accidentally suffered while said policy is in force by an employé of such partnership. does not indemnify such partnership, or the members thereof, against loss. for injuries suffered by an employé of a corporation in which they are stockholders."

[7] The assignment under the facts shown is not, we think, well taken for more than one reason. The evidence shows that the policy sued on was made payable to W. C. Robertson & Co., and it is sufficient to show that, while the Planters' Gin Company was a corporation, it was in fact owned and dominated by the said Robertson & Co., a copartnership. It appears that W. C. Robertson & Co. owned practically all the stock in the Planters' Gin Company, and sold the same, with all its properties, to farmers at the town of Jesse, in Hill county, and obligated themselves in the transaction to satisfy the judgment that should be obtained by Ed Washington against said Planters' Gin Company on account of the injuries received by him in falling from the roof of said com-

pany's gin house. It further appears that Washington recovered a judgment against the Planters' Gin Company, and that Robertson & Co. paid off and satisfied said judgment. There is pinned to the face of the policy sued on what is termed a "rider," which is dated December 10, 1908, and reads thus:

"Notice is hereby accepted that the gin plants named under this policy are owned and operated by W. C. Robertson of Hillsboro, Hill county, Texas, who does business under the firm name of W. C. Robertson & Co. Said gin plants being named and designated as follows under the policy: The Planters' Gin Co. of Jesse, Texas. The Garrison Gin Co. of Hillsboro, Texas. The Robertson Gin Co., Texas."

The testimony showing that W. C. Robertson & Co. owned practically all the stock of the Planters' Gin Company, and that they sold the same, together with all the properties of the company, and obligated and bound themselves to pay off and satisfy any judgment that Ed Washington might obtain against the Planters' Gin Company on account of the injuries sustained in falling from said company's ginhouse, and further showing that they have fulfilled said obligation, we think they were subrogated to the rights of the Planters' Gin Company, if any it had, and could maintain this suit. But, however this may be, the contract of insurance having been made with Robertson & Co., they were authorized, we think, to maintain this suit, even though the beneficial interest in the policy was in another. This view, we think, is clearly sustained by the decision of our Supreme Court in Allison, Bailey & Co. v. Ins. Co., 87 Tex. 595, 30 S. W. 547. The facts in that case are not identical with the facts in the case at bar, but they are sufficiently similar to make the principle enunciated therein applicable. The suit was upon an insurance policy contract. Allison, Bailey & Co. were the payees in the contract, and brought the suit. At the time of the suit they had no interest in the proceeds of the policy, but same belonged to S. N. Allison. The right of Allison, Bailey & Co. to maintain the suit was challenged, and the case having reached the Supreme Court on writ of error, Mr. Justice Brown, speaking for the court, said:

"It is a general rule, applicable to all written contracts, that he who has the legal title may maintain an action upon it, notwithstanding another may have the equitable right to the proceeds of it when collected. Thompson v. Cartwright, 1 Tex. 87, 46 Am. Dec. 95; McMillan v. Croft, 2 Tex. 397; Knight v. Holloman, 6 Tex. 153; Wimbish v. Holt, 26 Tex. 674; Collins v. Bank, 75 Tex. 254, 11 S. W. 1053. This court has applied this rule to actions upon policies of life insurance. Ins. Co. v. Williams, 79 Tex. 633, 15 S. W. 478; Cheeves v. Anders [87 Tex. 287, 28 S. W. 274, 47 Am. St. Rep. 107] decided at the present term. There is no difference between the rights of the legal holder of this character of contract and any other to sue upon it; there can be no difference between the payee in a policy of this kind and a contract of life insurance. In Insurance Co. v. Williams, the

court, in passing upon a similar question, said: 'The question thus raised is not one of ultimate right to the money to be recovered, but of right of appellee to maintain the action; and it has been held in many cases, under policies like that involved in this case, that the person named by the assured and insurer in the policy as the person to whom the sum secured by the policy shall be paid may maintain an action on the policy without reference to the interest of such person in the life of the assured.' In the same case the court, quoting from Insurance Co. v. Baum, 29 Ind. 240, said: 'It is not for the insurance company, after executing such a contract and agreeing to the appointment so made, to question the right of such appointee to maintain the action. If there should be a controversy as to distribution among the heirs of the deceased of the sum so contracted to be paid, it does not concern the insurer. The appellant contracted with the insured to pay the money to the appellee, and upon such payment being made it will be discharged from all responsibility.' "

There is no controversy here between the Planters' Gin Company and W. C. Robertson & Co., as to who is entitled to the proceeds of the policy sued on. The case presented is one where the plaintiff in error, for a consideration paid, agreed to insure against losses that should be sustained on account of injuries received by employés working at the Planters' Gin Company, and by its consent W. C. Robertson & Co., were named in the contract of insurance as the ones to whom the money should be paid. As argued by defendant in error's counsel, to permit it now to say that it will not pay them will, in effect, be to allow it to deny any liability whatever. The real situation was that Robertson & Co. practically owned the Planters' Gin Company. The testimony does not definitely show it, but it is probable that G. T. Green held one share of the stock of the company, but, in the event of loss, the real parties to suffer thereby would be Robertson & Co. There is no contention made by the pleadings that any fraud was practiced with respect to the ownership of the Planters' Gin Company, whereby plaintiff in error was caused to make the policy payable to W. C. Robertson & Co. The cases cited by plaintiff in error are clearly distinguishable in their facts from the case before us, and do not control a decision of the question.

The seventh and eighth assignments of error have been disposed of against the plaintiff in error by what we have already said and need not be further considered. We believe the judgment of the district court should be affirmed, and it is so ordered.

Affirmed.