## T. H. Mastin & Company v. Standard Elkhorn Coal Company.

(Decided December 12, 1930.)

EDW. L. ALLEN, A. J. MAY, W. M. DUFFY and MORRIS & JONES for appellant.

JAMES & HOBSON and LIVEZY & McNEER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This action was originally instituted by the appellant, a copartnership, as attorneys in fact for what is styled in the record as "Subscribers at Consolidated Underwriters, a Reciprocal or Inter-insurance Exchange," to recover of the appellee the sum of $1,296.63, with interest from March 31, 1926, until paid, claimed by the appellant to be due and owing it as attorneys in fact of the subscribers to said exchange for unpaid sums due on an interindemnity insurance policy contract issued to the appellee on October 31, 1924, in lieu of a similar expiring policy. The amount sued for in the petition was not disputed, and in the final judgment the appellant was given credit by the amount sued for. We need not discuss further this branch of the case. In due time the appellee filed its answer wherein it pleaded as a counterclaim and/or set-off against the amount sued for by the appellant a claim for the sum of $6,000, which the appellee alleged was due and owing it from the appellant under an indemnity insurance policy issued by the appellant to it and effective as of date April 6, 1922. The appellee alleged that, by this contract of insurance, the appellant, acting as attorney in fact and for and on behalf of the subscribers to the Consolidated Underwriters, agreed to indemnify the appellee from any loss by reason of the liability imposed by law upon it for damages on account of bodily injuries accidentally suffered by any person or persons not employed by it while upon the premises occupied by it in the conduct of its business at the places described in the schedule of warranties, including the sidewalks or other ways immediately adjacent thereto. The claim of the appellee against the appellant under this policy arose out of these facts: The appellee at the time this policy of 1922 was issued operated, and, so far as this record shows, still operates, a large coal mining plant at Garrett in Floyd county, Ky., and employed a large number of

men. The location of this mining plant being in a remote part of the mountains of our state, it was necessary for the appellee to furnish to its employees houses in which to live. These houses were erected either on land owned in fee by the appellee or on land leased for coal-mining purposes, and were upon the same property as that on which the coal-mining operations of the appellee were being conducted. It appears that in the neighborhood of this coal-mining property of the appellee there were a number of gas-producing wells, and that appellee's competitors in the labor field had equipped their miners' houses with facilities for gas and were furnishing to their miners who lived in these houses gas at either a meter rate or a flat rate per month. The evidence very clearly shows that appellee was not engaged in the gas business, as the appellant made some effort to show, but was furnishing gas to its employees who resided in its houses in the effort to maintain its labor organization intact. On November 5, 1923, the appellee had in its employ a man by the name of Davis, and he and his wife, Katherine Davis, who was not an employee of the appellee, were living in one of the appellee's miners' houses which was equipped with gas. During the night of November 5th, through the negligence of the appellee, the flow of gas was shut off in the mains feeding the miners' houses. As a result, a gas fire which was then burning in the home of Katherine Davis went out while she was asleep. Later in the night, without warning and through the carelessness of the appellee, the flow of gas was restored to the mains, and, the cocks on the gas stove in the Davis home being open, the gas of course escaped into the room where Katherine Davis was sleeping and made her very ill. She thereupon sued the appellee and recovered a judgment against it which was affirmed by this court in the case of Standard Elkhorn Coal Co. v. Davis, 222 Ky. 773, 2 S. W. (2d) 670. In addition to costs, the appellee was compelled to pay Mrs. Davis in satisfaction of that judgment the sum of $6,000, and this is the sum for which it sought judgment against the appellant. When appellee was notified of the claim of Mrs. Davis, it promptly notified the appellant of it. The appellant made an investigation of the claim, and as we think the record shows, though not as clearly as it might have, defended the suit brought by Mrs. Davis in the lower court and in this court, although at the time and throughout that litigation it did not expressly admit lia-

bility under its policy, and neither did it expressly repudiate liability. By its answer, however, in this case the appellant repudiated any liability under the 1922 policy on the ground that the accident to Mrs. Davis did not come within the terms of its undertaking of indemnity in the 1922 policy, and, as briefed in this court, that is the only ground of defense upon which appellant relies. The lower court held that the accident came within the terms of the policy, and gave judgment for the appellee in the sum of $6,000, credited by the $1,296.63 sued for by the appellant. From the judgment so entered, this appeal is prosecuted.

The applicable clauses of the policy of 1922 are these: Appellant agreed:

"A. To indemnify the subscriber (appellee) . . . against loss by reason of the liability imposed by law upon the subscriber for damages on account of bodily injuries . . . accidentally suffered by any person . . . not employed by the subscriber while upon the premises occupied by the subscriber in the conduct of his business at the places described in the schedule of warranties hereof, including the sidewalks or other ways immediately adjacent thereto. . . ."

"P. The following declarations, numbered one to six, inclusive, are warranted by the subscriber to be true. . . ."

"4. A fully classified and correct description of the business operations, . . . and the specific locations where such operations are conducted, are given in the following statement:

| Classified Description of Operations | Specific Location Where Work is Done. |
|---|---|
| All work in connection with and incidental to, the complete operation of a drift coal mining plant. | Garrett, Kentucky; Floyd County; Beaver Creek and Elkhorn Branch C. & O. Railway." |

For the appellant, it is argued that the accident to Katherine Davis is not one against which the appellant insured the appellee under the quoted clauses from the contract, since the accident did not happen to Mrs. Davis while she was "upon the premises occupied by the" appellee "in the conduct of its business at the places described" in the warranty quoted. The place described in the schedule of warranties is Garrett, Ky, and the place where Katherine Davis was injured was upon the

property owned by the appellee at Garrett, Ky., and forming a part of the tract of land on which the actual work of mining was done. Clearly the place of the accident was upon premises occupied by the appellee in the conduct of its business. Appellant would narrow the expression ''premises occupied by the subscriber in the conduct of its business'' to such premises as were used only in the actual work of mining and the liability to an accident connected with the actual mining operations. But even the classified description of operations appearing in subsection 4 of clause P is broader than that, for it expressly covers all work in connection with and incidental to the complete operation of a drift coal-mining plant. It is a matter of universal and common knowledge to the people of this state that our coal or other mining companies, such as clay-mining companies and many stone quarries, are, by the very necessity of things, due to their remote location, compelled to furnish houses to their employees in which to live, and that the furnishings of these houses is just as much a part of the conduct of the business of these mining companies as is the actual work in the mine itself. But for the miners there could be no mining, and, but for houses in which to live, there would be no miners who would work for the company. The record in this case very satisfactorily shows that, in the competition in the labor market from which appellee recruited its miners, it was necessary for it to equip and furnish the houses it had for its miners with gas even as it was necessary to furnish a roof on such houses. The ground upon which these miners' houses was located was on part of a larger tract on which the actual work of mining was done, and hence it follows that Katherine Davis was injured while upon premises occupied by the appellee in the conduct of its business at the places described in the schedule of warranties, and her accident was connected with and incidental to the complete operation of a coal-mining plant. Diligent search by counsel in their excellent briefs filed in this case and a supplemental search made by this court have not brought to light any case of a mining company on all fours with this case, but it has brought to light many analogous cases sustaining the view herein taken.

For example, in the case of Travellers' Insurance Co. v. Wild River Lumber Co., 83 F. 977, 978 (C. C. A. First Circuit) the facts were that the insurance company had issued an insurance policy insuring the lumber com-

pany against loss from liability to every person sustaining accidental bodily injuries under circumstances which imposed upon the lumber company liability therefor. The application for the policy contained this clause: ''It is understood that in the conduct of a portion of their business the assured employ a railroad owned by themselves and used only for lumbering purposes.'' The lumber company was remotely situated and maintained company stores and company houses for its employees. It owned a railroad which ran from its lumbering operations to a junction with a through line. This railroad was used for the transportation of lumber supplies and persons having business at the mills and company stores of the lumber company. Two traveling salesmen visited the store of the lumber company for the purpose of soliciting orders. After completing their business they made arrangements to be transported to the railroad junction for cash fare. While being so transported to the junction, there was an accident to the locomotive on which they were riding, and these salesmen were injured. The lumber company had to pay the salesmen damages for the injuries thus incurred, and the question was whether the lumber company could hold the insurance company responsible to it for the damages so paid. It was held that it could. In its opinion, the court said:

> ''By the policy the lumber company was insured against loss from liability to every person who should, during a stated period, 'sustain accidental bodily injuries under circumstances which shall impose upon the insured a common-law or statutory liability therefor.' Conceding for the purposes of the case, that there should be taken from the application, and incorporated into the contract, the following language: 'It is understood that in the conduct of a portion of their business the assured employ a railroad, owned by themselves, and used only for their own lumbering purposes,' and that the contract insures for accidents upon the railroad only when it is used for lumbering purposes, this limitation, or exception does not avail the plaintiff in error. The company's lumbering operations were carried on upon lands owned by it, and it had mills and dwellings for workmen, in a region not otherwise inhabited. It also had, in connection with its mills and the dwellings mentioned, a shop or store,

where it kept, and sold to its agents and workmen, such groceries and other supplies as were required for such a population as was there found. These mills and other buildings were remote from any other settlement, and could not be reached by any public road or highway. . . . Over the same railroad, needed supplies for operations, and stock or merchandise for the shop above mentioned, were transported, as there was occasion for so doing. The company's agents and workmen, and persons having business at the mills, or with the shop, including insurance agents and commercial runners and others, also were carried, from time to time, over said railroad, both ways. From some of the persons so carried over its railroad, the company demanded and collected pay for the transportation. We are of the opinion that the transportation upon the company's private railroad of two commercial travelers, who had come to the premises of the lumber company to transact business with the company, and to make sales, and to take orders for supplying the shop of the lumber company, was a use of the railroad within the scope of the company's 'own lumbering purposes.' The fact that the travelers paid a sum of money for a special conveyance is immaterial, since the railroad was used by them and by the lumber company in direct connection with the business of the company.''

In the case of Associated Theatres, Inc. v. Industrial Accident Commission, 57 Cal. App. 105, 206 P. 665, 667, decided in March, 1922, and a hearing in the Supreme Court of California being denied on May 15, 1922, the facts were that a carpenter employed by the Associated Theaters, which ran a moving picture theater, was sent by the controlling stockholder of the company to his home to widen the door of a garage wherein this controlling stockholder's automobile, which was chiefly used in the business of the theater, was kept. While the carpenter was so engaged, he was injured, and the question was whether or not at the time of his injury the employee was acting as an employee of the Associated Theaters. It was held that he was. The court said: ''The change which he was ordered to make in the door of the garage had direct relation to the automobile which, as we have seen, was used in the theater business. Under these cir-

cumstances, we think that the work was in fact connected with the business of the theater."

In the case of Maryland Casualty Co. v. W. C. Robertson & Co., 194 S. W. 1140, 1143 (Court of Civil Appeals of Texas, Dallas) the court held that a policy insuring an employer against injuries to employees engaged in ordinary repair and gin work, or any occupation connected with the business of cotton ginning, cotton pressing, and bookkeeping, covered liability to an employee who was painting the roof of the gin to preserve the iron from rust. The court said that, while such work clearly came within the "repair clause" of the policy, it also came within that clause reading "engaged in the occupations connected with the business of cotton ginning."

In the case of E. Clemens Horst Co. v. Hartford Accident & Indemnity Co., 27 F. (2d) 42, 43 (C. C. A. Ninth Circuit), the facts were that the insurance company issued to the Horst Company a policy insuring it "against loss by reason of the liability imposed by law for damages on account of bodily injuries suffered as a result of an accident occurring while this policy is in force by any employee or employees of the assured while at or about the work of the assured described in Warranty 4." Warranty 4 described the type of employment covered by the policy as "hop picking, including work incidental thereto." Horst employed a man by the name of Rogan and his wife to pick hops beginning September 1, 1929, and agreed to transport Rogan and his wife without charge from the railroad station to the hop yards. Rogan arrived on August 29th at the railroad station and was met by an agent of the Horst Company with a motor truck, and, while they were being transported from the railroad station to the hop yards they were thrown from the truck and sustained injuries. They sued the Horst Company and recovered damages. Thereupon the Horst Company sued the insurance company for reimbursement under the policy. The court held the insurance company liable and in the course of its opinion said:

"Bearing in mind the controlling principle that, where a policy of insurance is so framed as to leave room to two constructions, the words used should be interpreted most strongly against the insurer (citing cases) we turn to the contract in question here, in order to determine from all of its provi-

sions, as related to the circumstances and the purposes of the insurance to ascertain what was the intention of the parties thereto. . . . The policy . . . describes the work covered by the policy as hop picking, 'including all work incidental thereto.' . . . .

"The work of enlisting the services of 2,000 hop pickers, the most of whom necessarily were brought from a distance, was clearly work incidental to hop picking, work without which the hop picking would have been impossible, and we are of the opinion that no unwarranted meaning is given to the word 'employee,' as it is used in the policy, if it is held to include all persons who shall have entered into a contract of employment with the plaintiff, and in pursuance of that contract rendered themselves to the plaintiff at an appointed rendezvous, to be carried by it to the hop yards, where the work was to be performed, although in the instant case that was done two days prior to the actual commencement of the work: for in the contract pains were taken to state broadly the risks that were intended to be insured against, and to provide that protection should extend to all operations necessary or appurtenant to hop picking, 'including all work incidental thereto.' Clearly, the transportation of the Rogans to their working place was an operation necessary and incidental to the work which they had contracted to perform and was distinct and separate from the work of hop picking."

Other cases may be found under the title of "Insurance," section 435, in the Am. Dig. system.

From the cases cited, it will be seen that the courts have always given a liberal construction to clauses of insurance policies like those here involved, and that, where the accident happens in connection with an activity or operation that is so reasonably necessary for or incidental to the main operation of the assured as that it would be very difficult if not impossible to carry on such main operation without the incidental activity or operation, such accident will be held to be one against which the policy provides indemnity. The furnishing of a miner's house equipped with gas was, under the facts, of this case, clearly incidental to and connected with the operation of the appellee's mines and was upon the

premises of the appellee on which the coal mine was located. The accident to Mrs. Davis was one against which the policy of insurance provided indemnity, and so the lower court did not err in the judgment it awarded.

Its judgment is therefore affirmed.