PROVIDENCE WASHINGTON INSUR-
ANCE COMPANY, Appellant,

v.

Jacob RABINOWITZ, Morris Rabinowitz,
David Rabinowitz and Sol Goldstein,
d/b/a Miami Diamond Center, Appellee.
No. 15469.

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1955.

Alan S. Boyd, Miami, Fla., for appellant.

A. Lee Bradford, Frank A. Howard, Jr., Miami, Fla., Dixon, DeJarnette, Bradford & Williams, Miami, Fla., for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging the issuance to plaintiffs of an insurance policy, known as a Jewelers Block policy No. JB–76356, and a loss thereunder, plaintiffs, a co-partnership operating as Miami Diamond Center, sued for recovery of the loss and for reasonable attorneys' fees.

The claim was: that the policy insured "Pearls, precious and semi-precious stones * * * and other stock usual to the conduct of the assured's business owned by the assured", with maximum liability;[1] that plaintiffs had suffered a loss under clause 2 of the policy of precious stones in the custody of a dealer, of the value of approximately $12,000; that defendant had wrongfully refused to pay the loss on the ground, that plaintiff, in answering question 21 of the proposal for the policy, "The estimated average daily amount of property in the custody or control of others except * * *", had falsely answered "nil"; that this answer had been inserted by mutual mistake, and the policy should be reformed so that the answer, instead of "nil" should read "$40,000"; and that plaintiff should have judgment for the amount sued for.

The defenses were: that the policy had been issued for a consideration based upon the warranties contained in the proposal, including the answer to question 21; and that there was, and is, no mutual mistake in, or any other reason for reforming, the policy. Its further answer was: that plaintiffs purchased the policy with full knowledge that the answers constituted warranties; and that, in any event, the loss was excluded from coverage under Par. 2 of the policy.

These issues coming on for trial to the court without a jury, it was established by the undisputed evidence that it was intended to insure, and the policy issued did insure,[2] "Pearls, precious and semi-precious stones * * * and other stock usual to the conduct of the assured's business owned by the assured", subject to the limitations of liability fixed in clause 2 of the policy.

Upon the question of the insertion of the word "nil" in the answer to question 21, "The estimated average daily amount of property in the custody or control of others except as provided in answers to questions 12, 18 and 20, during the last 12 months", the evidence of the representative of plaintiffs who signed the application, was positive that he gave no directions to defendant's agent to insert the word "nil". The evidence of insurer's agent, while confused, vacillating and conflicting, was sufficient to support, indeed almost to require a finding by the trier of the facts that in writing the word "nil" in as it was admitted he had done, he did so of his own accord and volition, and under a mistake of fact as to what was called for by the question, and certainly without intending by so doing to state that the insured had not during the time called for in the question had property in the custody of a dealer as that term was used in the insuring clause of the policy.

On this evidence, the district judge, holding that the basic question in the case was, do the facts warrant the conclusion that the answer "nil" to the question as to the amount of property in the custody or control of others, during the time inquired about, constituted a warranty that there had been none in the hands of dealers as that term was used in clause 2(B) of the policy, held that no such conclusion was warranted.

Further finding that the parties had intended, the one to obtain, the other to furnish, insurance giving the full coverage provided under clause 3 of the policy,

---

1. "2. Limitations of Liability.
   "The maximum liability of the Company resulting from any one loss, disaster or casualty is limited to
   "(A) * * *;
   "(B) $75,000 in respect of property which is (1) * * * (2) * * * (3) in the custody of a dealer in property of the kind insured hereunder not employed by or associated with the Assured, * * *."

2. "3. Property Insured
   "The Property Insured is as follows:
   "(A) Pearls, precious and semi-precious stones, jewels, jewelry, watches and watch movements, gold, silver, platinum, other precious metals, and alloys and other stock usual to the conduct of the Assured's business, owned by the Assured;"
   "(B) * * *" (not material here)
   "(C) * * *" (not material here)

including coverage on goods in dealer custody as provided under clause 2(B) (3), and that neither had intended to write an answer to question 21, which would, as now claimed by defendant, avoid the policy, he held in effect that question 21 was not intended to, and it did not, include dealers and, therefore, the symbol "nil", written in by insurer's agent, was not intended to be a representation, and it did not constitute a false statement as to goods in the hands of dealers in the period inquired about.

Having arrived at the conclusion that the answer was not a false answer and that plaintiff could recover on the policy as written without reforming it, though he did hold that if necessary for relief he would grant reformation, he entered a judgment for recovery on the policy for the amount sued for plus attorneys' fees.

Here insisting that the district judge misconceived and misdecided the issue, appellant urges upon us: that, as matter of law, the record requires the conclusion that the answer to question 21 was a warranty and false, and on its face defeated the policy; that there was no basis in the record for a decree of reformation; and that defendant should have had judgment.

We cannot agree with this view. Rigid and binding as warranties are and because they are, it is of the essence of their binding force that, when it is sought to defeat a plain coverage by a claim of breach, it must be clearly shown that the statements relied on to accomplish this are clear in their purpose and effect, that is that there is no ambiguity either in the question or the answer. We think that the question and answer relied on in this case do not measure up in these respects to the standard

required of a warranty and that the principle controlling here is that where, as here, an insurer has clearly and plainly extended coverage in a policy, it must, in order to avoid liability thereon, clearly show, not that the matter claimed to be misstated was material to the risk, because, if the matter relied on is a warranty as distinguished from a representation, this is not essential, but that the question is clear and without ambiguity and false, and the answer is equally clear and false,[3] and this defendant has failed to do.

If, however, we are mistaken in this, and the question and answer clearly on their face refer to dealer custody so that the misstatement as to dealer custody constitutes a breach of warranty and thus nullifies the coverage, still the judgment should be affirmed, for the evidence demands a finding that the word "nil" was placed in the policy without the knowledge and consent of the defendant by the unilateral mistake or willful act of the agent or by mutual mistake, and, if the former, the insurer is estopped to take advantage of it,[4] while if the latter, the policy is clearly subject to reformation.

To defendant's argument that this court has held in New York Life Ins. Co. v. Stewart, 5 Cir., 69 F.2d 957, that an insured must read his policy and must complain of any of its terms to which he objects before and not after the loss, plaintiff correctly opposes the law of Florida as it is stated in Blumberg v. American Fire & Cas. Co., Fla., 51 So.2d 182, 184: "Insurance policies are prepared by the insurance company and, as in this case, the insured may never read them unless some controversy arises as to their coverage. The law does not require him to do so."[5]

3. Cf. 29 Am.Jur. "Insurance", pp. 428–433; 45 C.J.S., Insruance, § 473 (4) e, pp. 178–180–181, and § 498, pp. 225–226.

4. Massachusetts Bonding & Insurance Co. v. Williams, 123 Fla. 560, 167 So. 12; Columbian Nat. Life Ins. Co. v. Lanigan, 154 Fla. 760, 19 So.2d 67; Metropolitan

Life Ins. Co. v. Poole, 147 Fla. 686, 3 So.2d 386.

5. Cf. Cyclopedia of Insurance Law (Couch) Vol. 6, Sec. 1391, p. 498; and our decision in Carson v. Home Fire & Marine Ins. Co., 5 Cir., 39 F.2d 50, at pages 51 and 52.

In Day v. Firemen's Fund Insurance Company, 5 Cir., 67 F.2d 257, 258, cited with approval in Springfield Fire & Marine Ins. Co. of Springfield, Mass. v. Martin, 5 Cir., 77 F.2d 492, this court, stating and applying the equitable principles governing a case of this kind, where the evidence admits of only one conclusion, that if the act relied on as breach of warrant was the act of both of the parties it was the result of a mutual mistake, thus sets them out:

"Whether this mistake was one of law * * * or of fact * * *, is not material, for, operating as it did to make the parties do a vain and foolish thing, write an invalid contract of insurance, it is the kind of mistake which equity will relieve against. (Citing cases.) The remedial rule that, where parties effect a writing as the evidence of their contract, which is materially at variance with their mutual intention, either party can get a decree reforming the writing to express the intention (Restatement, Contracts, § 504), is one of wide application and beneficial results. It gives to one contracting party the right to compel another, in a court of conscience, to do what his own conscience should have dictated that he voluntarily do. An insurance company has power, even after the occurrence of a loss, to make a voluntary correction, and an agent authorized to make contracts of insurance may, during the continuance of his agency, though subsequent to a loss, correct the policy issued by him to conform to the agreement of the parties. 14 R.C. L. § 83. It is therefore universally held that, if this correction in a proper case of mutual mistake is not voluntarily accorded, insurance policies may be compulsorily reformed to express the real agreement. (Citing cases.)"

The judgment was right. It is affirmed.