**E. D. BOLLING, Plaintiff,**

v.

**WESTCHESTER FIRE INSURANCE CO., Defendant.**

**Civ. A. No. 2239.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

Oct. 9, 1969.

---

Shelby W. Smoot, Kingsport, Tenn., for plaintiff.

Walter O. Waddey, Hunter, Smith, Davis, Norris, Waddey & Treadway, Kingsport, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is a diversity action, 28 U.S.C. §§ 1332(a) (1), (c), by the plaintiff, as third-party beneficiary thereunder, for the reformation of a Texas contract of public liability insurance on an automobile between the defendant Westchester Fire Insurance Company and its insured Jose Castillo. The issues were tried by the Court without a jury on June 16, 1969. Final briefs were received September 11, 1969.

Mr. Castillo is a Cuban refugee who speaks virtually no, and understands but little, English.[1] He purchased, in his name, for the use of his daughter Sara Castillo (now Mrs. Ortega) a 1961 Fiat sports car. Mrs. Ortega was involved in a traffic incident with that automobile, and as a result of the operation of the Texas financial responsibility statutes, the authorities notified Mr. Castillo of the impending suspension of his driving privileges. This vehicle became inoperative in late December, 1965, and, in so far as is disclosed by this record, has never been driven again. Subsequently, Mr. Castillo purchased as his family car a 1962 Oldsmobile automobile, but did not obtain liability coverage on it at that time.

---

1. Mr. Castillo testified by deposition herein through an interpreter.

■ As the date Mr. Castillo's driving privileges were to be suspended finally approached, he had planned a motor trip with his family to New York City. He was confronted with a dual problem, *viz.*: retaining his driving privileges and obtaining public liability insurance coverage on his Oldsmobile automobile before leaving on the extended trip by automobile. The Castillos were acquainted with Dr. Rudolf Birnholz, a German political economist who spoke Spanish (their native tongue) fluently. Dr. Birnholz was engaged in the worldwide exporting business at the time pertinent to this consideration, although at previous times he had engaged in the business of writing certain types of insurance. At no pertinent time was Dr. Birnholz licensed to engage in writing casualty insurance on motor vehicles. Accordingly, it cannot be contended successfully that he was Mr. Castillo's agent in the procuring of the policy of insurance at issue. *Cf.* Dugan v. General Accident Fire & Life Assur. Corp., Tex.Civ.App. (1967), 421 S.W.2d 717. However, Dr. Birnholz had written hospitalization and income-protection coverage on members of the Castillo family, and they turned to him with all their insurance problems.

There were discussions involving Dr. Birnholz and the Castillos concerning their aforementioned twofold problems, maturing in a conference between Dr. Birnholz and Mrs. Ortega on June 15, 1966. He gave her his counsel reluctantly, recommending the services of a certain attorney in connection with the license-suspension matter and referring Mrs. Ortega to the defendant's local agent regarding their insurance needs. Mrs. Ortega appeared remarkably concerned that her father not lose his driving privileges and seemed to think that *post facto* liability coverage on the inoperative Fiat was indicated in that connection. At that point, Dr. Birnholz suggested, to calm Mrs. Ortega's concern, that both automobiles might be insured; but she advised that her father was insisting that the Oldsmobile be covered and that the impending travel expenses prevented the insuring of both vehicles.

After communicating with the agency by telephone, Mrs. Ortega visited on the afternoon of the same day the offices of Howell and Associates, Inc., the defendant's general agents. It is difficult to discern from the conflicting evidence exactly what occurred there. There are inconsistencies in the testimony of Mrs. Ortega, and the agent's employee, Mrs. Bess Beck, could recall but little of the ensuing transaction. It is manifest, however, that the defendant's policy of public liability insurance No. FCA 17 45 19 was issued validly. The Court finds from all the evidence that Mrs. Beck described the covered vehicle as a certain 1961 Fiat automobile, while Mr. Castillo intended that this policy cover his 1962 Oldsmobile automobile.

■ The Court finds further that the mistake in the description of the covered automobile was unilateral on the part of Mrs. Beck. The principal reason underlying this finding is that both Mrs. Beck and Mrs. Ortega agree that the agent's employee knew that the Fiat was inoperative; otherwise, this experienced insurance agent took money from Mrs. Ortega for the downpayment on an installment premium in consideration of her principal's assuming the risk of her father's liability arising from the operation of a motor vehicle, knowing that automobile to be inoperative. The writing of an invalid contract of insurance would have been a vain and foolish thing, the type of mistake against which equity will relieve. Day v. Fireman's Fund Ins. Co., C.C.A. 5th (1933), 67 F.2d 257, 258, citing, *inter alia*, Phillipine Sugar E. D. Co. v. Phillipines (1917), 247 U.S. 385, 38 S.Ct. 513, 62 L.Ed. 1177; Springfield Fire & Marine Ins. Co. of Springfield, Mass. v. Martin, C. C.A. 5th (1935), 77 F.2d 492, 493, citing Northern Assurance Co. v. Grand View Building Association (1906), 203 U.S. 106, 107, 27 S.Ct. 27, 51 L.Ed. 109, 111.

■ There is nothing in this record to indicate that Mrs. Beck would have

declined for any reason to issue the same valid policy [2] describing Mr. Castillo's operable Oldsmobile, had the mistake not occurred before the ensuing accident; so, the defendant was not injured in any way by the mistake of the employee of its agency in the description of the proper vehicle. See Fireman's Fund Indemn. Co. v. Boyle General Tire Co. (Tex., 1965), 392 S.W.2d 352, 355[3]. It is clearly the law in Texas that where a policy of public liability insurance is validly issued, but there is a mistake in the description of the automobile insured, the policy will be reformed to reflect the correct description, and thus cover the true owner. General Insurance Co. v. Western Fire & Casualty Co., C.A. 5th (1957), 241 F.2d 289, 295[5], certiorari denied (1957), 354 U.S. 909, 77 S.Ct. 1294, 1 L.Ed.2d 1427, citing Providence Washington Insurance Co. v. Rabinowitz, C.A. 5th (1955), 227 F.2d 300, wherein it was held that an insurance company is estopped to take advantage of the unilateral mistake (or wilful act) of its agent or of a mutual mistake. *Ibid.*, 227 F.2d at 302[4].

■ When Mrs. Ortega arrived home with the receipt for the down payment on the premium given her by Mrs. Beck, Mr. Castillo and his son Ernest, who was a lawyer in Cuba before the voluntary exile therefrom of his family, "suspected" therefrom that the wrong vehicle had been insured. Before the Castillo family departed on their trip about 11:00 o'clock that evening, Mr. Castillo communicated his suspicions to Dr. Birnholz, advising him that he was " * * * not crazy * * * " to pay a premium for liability insurance on an automobile which was inoperative. Mr. Castillo assumed that Dr. Birnholz " * * * would take care of it; I supposed that he would be changing it * * * ." While Mr. Castillo may have

been negligent in depending upon the disinterested Dr. Birnholz to attend to the correction of the mistake, if both Mr. Castillo and Mrs. Beck can be said to have been equally at fault, his negligence is not a defense to the reformation herein. Kelley v. Ward (1901), 94 Tex. 289, 60 S.W. 311; Sanders v. Hickman, Tex.Civ.App. (1921), 235 S.W. 278.

■ The day following the insuring of the wrong vehicle, the right vehicle was involved in a traffic accident with the automobile of the plaintiff Mr. Bolling, a California citizen, in Tennessee. Mr. Castillo did not report this accident [3] to the defendant seasonably, because he was hospitalized for some 115 days thereafter. There was no prejudice to the defendant from this noncompliance with the policy provisions. Maryland Cas. Co. v. W. C. Robertson and Co., Tex.Civ.App., 194 S.W. 1140. It had ample time to investigate the accident under a nonwaiver, to deny coverage, and to decline to represent Mr. Castillo in an action against him for damages arising out of the accident. The plaintiff was awarded a judgment in Tennessee against Mr. Castillo for $13,000 and costs. The judgment has not been satisfied by appropriate legal process, and Mr. Bolling claims he is entitled to the proceeds of the policy on his resulting judgment, costs, penalty and interest.

■ ■ The plaintiff Mr. Bolling is in vicarious status to Mr. Castillo herein, and entitled to the same relief as the named insured. United Services Automobile Association v. Russom, C.A. 5th (1957), 241 F.2d 296, 298. The defendant cannot in equity be permitted to profit from its own mistake, and is hereby declared estopped from denying its liability under a validly issued contract of insurance in which the incorrect automobile was described because of the

2. That Mrs. Beck would have issued the policy on the Oldsmobile is indicated by the fact that, after the Oldsmobile was wrecked in Tennessee, she substituted (on July 13, 1966) yet another Fiat as the insured vehicle by endorsement, and thereafter added the 1956 Oldsmobile of Tony Gomez thereupon, excluding Mr. Castillo as the owner and insured.

3. Ernest Castillo made the report some 15 days after the accident.

unilateral mistake of its agent's employee. Judgment will enter for $13,000 and interest at the rate of six per cent (6%) per annum from November 27, 1967, or to the extent of the limits of said policy, if a smaller amount.

■ No penalty is imposed. The difficulty this Court has experienced in adjudicating these issues suffices to demonstrate that the defendant cannot be said to have declined coverage and representation without reasonable justification under the prevailing circumstances.