**THE COLUMBIAN NATIONAL LIFE INSURANCE COMPANY, a corporation. v. JAMES A. LANIGAN, and MARY T. LANIGAN.**

19 So. (2nd) 67                                                    June Term, 1944
July 28, 1944                                                        Division B
Rehearing denied September 7, 1944

*Shackleford, Farrior & Shannon* and *Bailey Aldrich,* for appellant.

*Casler & Douglas,* for appellees.

SEBRING, J.:

Columbian National Life Insurance Company brought suit in equity for rescission and cancellation of two life insurance policies issued on the life of James A. Lanigan on December 2, 1940. In its bill of complaint the company alleged that on November 27, 1940, before issuance of the policies, certain written questions material to the risk were propounded to the applicant, who answered them falsely with intent to deceive the insurer into accepting him as a policyholder and that in reliance upon said answers the company issued the policies, which otherwise it would not have done had true answers been given and the real facts divulged. The questions charged to have been falsely answered concerned bodily ailments, diseases, or disorders suffered by applicant prior to the issuance of the policies. It is averred in the bill that to the questions propounded, applicant answered that he had never had any personal injury or accident and had never received indemnity for accident or illness; that he had had no medical advice or illness for a period of five years previous

to the application; and that he had never suffered from, taken treatment for or consulted a physician for any complaint or infection of the throat or lungs or digestive organs, except that he had had an appendectomy in 1934 and a perforated ulcer about 1925, from which there had been a complete recovery. The bill charges that the answers given by Lanigan were not complete and true but were incomplete and false, in that, in addition to the treatment for ulcer in 1925, Lanigan had been confined in a hospital and operated upon for perforated duodenal ulcer in 1933, and again in 1935. He had been confined in a hospital and treated by physicians for chronic peptic ulcer of the stomach in 1934, and again in 1936. In the latter year he had also been confined in a hospital and treated by physicians for lobar pneumonia. In 1936, and twice in 1939, he had received indemnity for accidents and illnesses necessitating treatment by physicians.

By amendment to the bill the company pleaded that the policies were applied for, delivered, and the first premiums paid in the State of Rhode Island; and that under the law of Rhode Island statements in the application constitute warranties, which, if materially untrue as written, will void the policy. The relief sought by the bill was that the policies be declared void and of no effect and that the defendant be required to deliver them up to the plaintiff for cancellation upon return to him of premiums paid.

Lanigan filed answer to the bill denying that he in anywise concealed from the plaintiff any information relative to his medical history and that any statements made by him were false or calculated to deceive or to induce the plaintiff to issue a policy of insurance which it would otherwise not have issued. Answering further, the defendant alleged, in essence, that prior to the issuance of the policies a medical examiner acting for the company called upon him at his home and interrogated him at length concerning his past medical history and present ailments and disorders. Applicant informed the medical examiner to the best of his memory and recollection of all details concerning past or present diseases or disorders, giving full information as to where and by whom he had been treated on each occasion. Applicant like-

wise specifically advised the medical examiner that he could not remember exact dates of various treatments received by him in the past but that if more complete information were needed, the medical examiner or other representative of the company had full permission to consult with physicians who had treated applicant and inspect records of the hospital where he had been confined on each occasion. From the information so given by the applicant the medical examiner, himself, filled out the application for insurance, writing into the medical report such answers as he deemed were responsive, relevant, and material to the subject of inquiry, then and there giving applicant to understand that he had set down all of the information in which the company was interested or which it needed in order to determine the desirability of the risk. If the insurance company was in anywise misled or deceived with reference to the facts of applicant's medical history, the same resulted from the failure of the medical examiner to properly record and report to the company the verbal answers given to the questions propounded.

By amendment to the answer the defendant denied that the transaction was governed by the law of the State of Rhode Island and averred that it was governed by the law of the State of Massachusetts.

Testimony was taken on the issues made by the pleadings. The defendant's version of the transaction was that he was engaged in the business of operating a dairy farm at the time the policies were issued. He resided at Seekonk, Massachusetts—a suburb of Providence, Rhode Island. Columbian National Life Insurance Company maintained an office at Providence. An agent from the Providence office sold Lanigan his policies. The medical examiner for the company came out from Providence to examine the applicant while applicant was busily engaged in his farm duties. The doctor asked questions, apparently reading from a form for medical report which he held in his hand. To the questions put, Lanigan attempted full, detailed and correct answers as best he could from his understanding of the questions and his recollection of the matters and things questioned about. Lanigan withheld none of the facts that were within his

recollection. He told of at least two operations of a serious nature which he had undergone prior to the examination, these being the only ones that he could remember at the moment. One was an operation for stomach ulcers in May 1925; the other was either an appendectomy or an operation for stomach ulcers around 1933, 1934 or 1935. He told the examiner of subsequent physical check-ups for stomach and digestive disorders on which occasions he had described to his physician a recurrence of abdominal pains and had been advised by the physician that he had nothing to worry about as such pains were to be expected after an operation. He gave the names of all physicians who tended him during the period, and the Rhode Island Hospital, located in Providence, as the place where the operations had been performed.

To the question, "Have you had any medical advice during the past five years?" he responded, "I have had minor colds and I have had a fractured finger. . . . If there is anything else, you go to the Rhode Island Hospital. . . . Whatever has happened to me you will get it at the Rhode Island Hospital." He was asked by the physician, reading from the record, "Have you had any disease, illness, injury or operation other than stated by you above?" to which he answered "Honestly, you had better consult the Rhode Island Hospital." To this response the examiner replied, "You are healthy now, and you are working long hours. Let it go as none.".

From the facts given by the appellant the medical examiner deduced the answers, giving to them such interpretation as he thought proper in the light of the questions read to the applicant. After the examiner had completed the form in his own writing he asked the applicant to sign the same. Applicant did so without reading the questions or answers, relying upon the statement of the examiner as representative of the company that he had received such information as was material.

In addition to the oral examination concerning past medical history it was shown that the medical examiner made a physical examination of the applicant. Subsequently, in his confidential report to the company the examiner described applicant's appearance in regard to health and vigor as

"good" and that he unqualifiedly recommended applicant for insurance as an "average" risk. It appears, also, that the company did not rely solely upon the confidential report made by the examining physician but conducted a separate independent investigation of the applicant before issuing the policies.

Proof offered by the plaintiff Company was at variance with the testimony given by the defendant. The examining physician emphatically denied that in filling in the medical report he did other than record the exact answers given by the applicant to the questions propounded. Evidence was adduced to show that in addition to the two operations admitted by applicant at least one other operation for stomach ulcers, and perhaps more, had been performed upon defendant within five years prior to the issuance of the policies. Testimony was given that while an insurance company may issue a policy in some cases where only two ulcer operations have been performed and there has been no recurrence of trouble for a five year period to application for policy, a policy of life insurance would not be issued where three or more such operations had been undergone at any time.

At final hearing the decree was for the defendant. In the final decree the chancellor made certain findings, the tenor of which were that the insured acted in good faith in his dealings with the company and was not guilty of fraud; that the insurer was put upon notice of the condition of applicant's health by the information given the medical examiner, and was given the name of the hospital in which applicant was treated, and the doctors who treated him, with full consent to consult it or them; that entire reliance was not placed upon the answers given in the application but an independent investigation was in fact made of the state of insured's health, prior to the issuance of the policies; that the insurance company was not entitled to the relief prayed for in the bill of complaint.

This appeal is from the final decree. We think that the prime question involved may be summarized as follows: When at the time of application for insurance the insured in good faith and according to his best recollection gives true but

incomplete information to the medical examiner of the company, asserting to the latter that such information may be incomplete, and referring the examiner to a convenient source at which such information may be fully supplemented by information more complete and detailed; and the medical examiner does not resort to such source of additional information but writes into the application from such facts as have been stated by the applicant his own version of the proper answers to be inserted to the questions propounded, at the same time assuring applicant that sufficient information has been given; and the company thereafter makes an independent investigation of the applicant as a medical risk before issuing the policy; may the company subsequently avoid the policy on the ground of fraudulent misrepresentation of material fact in the application, or misstatement of facts as to matters which increase the risk of loss?

The first matter that confronts us concerns the law to be applied to the transaction. Plaintiff has pleaded the Rhode Island law as being applicable. The defendant has denied that the policies of insurance are Rhode Island contracts, and has pleaded and proved that the policies were applied for, delivered, and the first premiums paid in the State of Massachusetts. It appears, therefore, that the question should be determined with reference to Massachusetts law, if possible. See Equitable Life Assur. Society v. McRae 75 Fla. 257, 78 So. 22. But nowhere are we advised by the pleadings just what the law of the State of Massachusetts is in regard to the precise question here presented. The general rule is that when the law of a foreign state is relied on as governing a given transaction it must be pleaded and proved as any other issue of fact; for the local courts will not take judicial notice of it. The Massachusetts law not being pleaded, the law of the State of Florida, as applicable to the facts, must govern; for the presumption is that when not pleaded and proven, the law of the sister state is the same as the law of the forum. Bemis v. McKenzie, 13 Fla. 553; Hagen v. Viney, 124 Fla. 747, 169 So. 391; Barnes v. Liebig, 146 Fla. 219, 1 So. (2nd) 247.

In this jurisdiction it is well settled that if the insured

gives truthful answers to questions contained in the application for life insurance, and the company's agent, either through fraud or mistake, inserts answers in the application which do not accord with the information given, the insurer cannot insist on breach of warranty, but is estopped from making such defense. Massachusetts Bonding & Ins. Co. v. Williams, 123 Fla. 560, 167 So. 12. Particularly is this true, we think, where the agent is a medical examiner who propounds questions to the applicant receiving in return information within the general scope of the inquiry from which he deduces the answers and inserts them in the application. Matters which may seem unimportant to the applicant may be deemed of exceeding importance by the examiner and may be actually so in ascertaining the condition of the insured's health. Conversely, matters which may seem of grave importance to the applicant may be actually inconsequential or trivial in the determination of the question whether the policy should issue. The applicant who is not skilled in medicine or surgery, or kindred matters, is justified, therefore, in relying upon the superior knowledge, good faith and judgment of the examining physician in such matters, and in assuming that in filling out the application the examiner will include therein such information as will be material to the company. Moreover, the insured will not be chargeable with such negligence as will render him liable for false or incomplete answers inserted by the representative merely because in reliance upon the superior position and professional knowledge of such representative of the company he signs an application filled out by the latter without reading it or correcting the answers. Under such circumstances, any information given to the medical examiner is information to the company, even though the examiner may not make out the application correctly and in accordance with the statements of the applicant, or may insert answers different from those given. Massachusetts Bonding & Ins. Co. v. Williams, supra; Stix v. Continental Assur. Co., 147 Fla. 783, 3 So. (2nd) 703; Metropolitan Life Ins. Co. v. Poole, 147 Fla. 686, 3 So. (2nd) 386.

Nor will this rule be defeated in the present case by the

fact that defendant admits having given incomplete answers to the questions propounded by the medical examiner. As appears from the testimony given for the defendant, the applicant repeatedly told the insurer's medical examiner that his statements regarding his medical history were incomplete, and that the representative of the company should examine the records of the Rhode Island Hospital and consult with physicians, whose names had been specifically given, for further information. The company was thereby put on notice that the applicant did not intend that the company should rely solely upon his own statement but should supplement such information as he was able to give by the records of the hospital and the physicians. All the facts now relied on to cancel the policies were thus present or easily available to the company, at the time of the examination, and the issuance of the policies. As shown by testimony coming from the plaintiff's witnesses, themselves, an independent investigation of Lanigan's health and habits was in fact made and nothing was found of an unfavorable or derogatory character to prevent the issuance of the policies to Lanigan. It thus appears that the company refused to rely solely upon such information as was imparted to them by their medical representative but sought additional facts elsewhere. Having declined to rely solely upon the answers contained in the application forwarded by the medical examiner, and having made independent investigation elsewhere, it follows that the company is charged with all the knowledge which it might have obtained had it pursued the inquiry to the end with reasonable diligence and completeness. And the fact that as a result of such investigation the company did not learn anything derogatory or unfavorable concerning applicant's past medical history is unavailing. Hirschman v. Hodges, O'Hara & Russell Co., 59 Fla. 517, 51 So. 550; Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408; Hancoy Holding Co. v. Lambright, 101 Fla. 128, 133 So. 631.

The testimony in this case was in sharp conflict, especially as to what transpired at the time the examination was conducted and the insured made his application for the policies. Whether the defendant falsely and fraudulently misrepre-

sented material facts which induced the company to issue the policies solely upon such statements, without regard to the independent investigation made by it, was a question for the chancellor sitting as trier of the facts. The conflicts have been resolved in favor of the defendant. There is competent evidence to sustain the decree.

All other questions raised by appellant have been duly considered but do not change our conclusion that the chancellor was correct in dismissing the bill of complaint, and that the decree appealed from should be affirmed.

The decree appealed from is affirmed.

It is so ordered.

BUFORD, C. J., BROWN and THOMAS, JJ., concur.