202 So.2d 906 (1967)
SECURITY LIFE & TRUST COMPANY, a North Carolina Corporation, Appellant.
v.
Margaret Smith JONES, Appellee.
Nos. 7127, 7128.
District Court of Appeal of Florida, Second District.
July 12, 1967.
Rehearing Denied October 27, 1967.
*907 Stephen H. Grimes of Holland, Bevis, Smith, Kibler & Hall, Bartow, for appellant.
E. Randolph Bentley, of Bentley, Miller, Sinder, Carr, Chiles & Ellsworth, Lakeland, for appellee.
SHANNON, Judge.
Security Life & Trust Company appeals from an adverse judgment entered on a jury verdict in favor of Mrs. Jones, who had sued as beneficiary under three life insurance policies issued on the life of her husband. The three policies were a declining balance policy worth $14,085.00 at Mr. Jones' death and two straight life policies worth $10,000.00 and $30,000.00. Appellant denied liability under the $14,085.00 policy on the ground that Mr. Jones had made false and incomplete statements regarding his health and medical history in his application for reinstatement of the policy. It denied liability under the two other policies on the ground that Mr. Jones had made false and incomplete statements regarding his health and medical history on his original application for the policies and again on his application for their reinstatement, and on the ground that the premiums required for reinstatement had not been paid prior to Mr. Jones' death.
Appellant assigns as error four points: 1) that the evidence was insufficient to present a jury question on the issues of estoppel and waiver of the insured's misrepresentations; 2) that the evidence was *908 insufficient to present a jury question on the issues of estoppel and waiver of the failure to pay the premiums necessary for the reinstatement of the straight life policies; 3) that Dr. Merritt should have been allowed to testify as to the significance of the omissions of medical history; and 4) that the jury should have been permitted to return a verdict for appellee on the $10,000.00 policy and for the appellant on the $30,000.00 policy.
In 1953 Mr. Jones had visited St. Joseph's Hospital in Tampa for forty-seven days and the Ochsner Foundation Clinic in New Orleans for ten days for treatment of an ailment thought by his doctors at both institutions to be a collagen disease, an extremely serious disease involving the connective tissue layers of the body. At one point while at St. Joseph's he was practically dead. At no time on his applications for the declining balance policy in 1962 and for the two straight life policies in 1963, and again on his later applications for reinstatement of the policies, did he mention these two visits. His answers on the various applications, when taken as a whole, were inconsistent, and in some instances obviously false. On his later applications he did acknowledge removal of a cyst by Dr. Stern at Lakeland General Hospital in 1963. In fact Dr. Stern, in addition to removing the cyst, had run extensive tests. He had secured a record of Mr. Jones' complete medical history, including a full report of his stays at the Tampa and New Orleans institutions, and had inserted it in the hospital records at Lakeland General Hospital. When appellant inquired of Dr. Stern regarding Mr. Jones, Dr. Stern reported his diagnosis of an "ill-defined condition" characterized by vertigo, fatigue, weakness, and feeling of unreality; mental depressional lymph odenopathy, generalized cause undetermined; and right inguinal hernia. Appellant ran additional tests, during which Mr. Jones flatly denied having had any such symptoms, but it never consulted the hospital records or made further inquiry of Dr. Stern.
After the two straight life policies lapsed, Mr. Jones applied for reinstatement and in late July, 1964, sent appellant a check for the required $288.80, but by the time additional medical tests had been run and the application for reinstatement approved, an additional $256.71 was needed to bring the premiums up to date. On September 2 appellant informed its local agent, Mr. Frady, of this fact and held Mr. Jones' $288.80 check pending receipt of the additional sum. Two weeks later, having heard nothing in that regard, appellant deposited the $288.80 check. On September 28 appellant learned that the check had bounced, and it wrote Mr. Jones giving him ten days in which to cover the check and urging him to do so "to insure your continued protection." Appellant, however, did not inform Mr. Frady of this development, and on September 30 he collected from appellee a check for $334.01, which was intended to cover the $256.71 and an additional month's premium in advance. Appellant received this check on October 2 and, not yet knowing that the $288.80 check had again bounced, wrote Mr. Jones congratulating him on the reinstatement of his policies. Mr. Jones died the next day.
We feel that there was sufficient evidence to present a jury question on the issues of estoppel and waiver of Mr. Jones' misrepresentations regarding his medical history. If an insurer makes an independent inquiry and the circumstances are such that he is in a position to ascertain the facts by a reasonably diligent and complete search, he is bound by what a reasonably diligent and complete search would show. Fecht v. Makowski, Fla.App. 1965, 172 So.2d 468, 471; New York Life Ins. Co. v. Strudel, 5 Cir.1957, 243 F.2d 90, 93; Columbian Nat'l Life Ins. Co. v. Lanigan, 1944, 154 Fla. 760, 768, 19 So.2d 67, 71. He cannot accept premiums with knowledge, actual or constructive, of facts sufficient to avoid the policy and later seek to escape liability on the basis of those facts. Johnson v. Life Ins. Co. of Ga., Fla. 1951, 52 So.2d 813, *909 816. See also 18 Fla.Jur., Insurance, Sec. 254 (1958).
Appellant made independent inquiry of Dr. Stern and, in light of his report, ran additional tests. Appellant did not, however, consult the hospital records, which contained Mr. Jones' complete medical history, or make further inquiry of Dr. Stern. We feel that reasonable men would be justified in concluding that appellant should have taken further steps, by way of inquiry of the hospital records or further inquiry of Dr. Stern or both. Such further investigation would have revealed the facts, and reasonable men would be justified in charging appellant with knowledge of those facts. The trial court did not err in submitting to the jury the issues of estoppel and waiver of the insured's misrepresentations.
We also feel that the evidence was sufficient to present a jury question on the issues of estoppel or waiver of the failure to pay the premiums necessary for reinstatement of the two straight life policies. Appellant's holding of the $288.80 check from July 28 to September 17 could be deemed unreasonable, and as such would constitute ground for estoppel. 29 Am.Jur., Insurance, Sec. 536, at 844 (1960). Likewise, appellant's failure to notify Mr. Frady that the $288.80 check had bounced could constitute a basis for estoppel. 12 Fla.Jur., Estoppel & Waiver, Sec. 42 (1957). With Mr. Jones seriously ill and with $40,000.00 insurance at stake, appellee was anxious to make certain that all premiums were paid, and Mr. Frady advised her that $334.01 was sufficient.
Moreover, appellant wrote Mr. Jones giving him ten days to cover his check, which it intended to redeposit. Appellant did not indicate that another reinstatement would be necessary. Reasonable men would be justified in concluding that appellant intended to carry the policies in force for at least the ten-day period, during which the insured could have arranged for payment of the $288.80. Since he died within that period, the policy was in force at his death. (See Kansas City Life Ins. Co. v. Davis, 9 Cir.1938, 95 F.2d 952; 50 A.L.R.2d 651, which held for the beneficiary under almost identical circumstances.) The trial court did not err in submitting this issue to the jury.
We also uphold the trial court's action in excluding Dr. Merritt's testimony. Appellant intended Dr. Merritt, who had treated Mr. Jones and who was not employed by appellant, to testify as to the importance of Mr. Jones' medical history. Insurance underwriting involves actuarial factors in addition to medical considerations. As the trial court pointed out, it was the testimony of underwriters that was relevant.
As to appellant's contention that the trial court erred in not permitting the jury to return separate verdicts on the two straight life policies, we agree with the trial court's view that there was not sufficient evidence to permit the jury to find that the premiums had been paid up on one policy and not on the other. The entire testimony shows that both checks contained amounts applicable to both policies.
Finding no error, we affirm the judgment of the trial court.
Affirmed.
ALLEN, Acting C.J., and KING, JAMES L., Associate Judge, concur.