651 So.2d 743 (1995)
Awilda VEGA and Justino Vega, Jr., etc., Appellants,
v.
INDEPENDENT FIRE INSURANCE COMPANY, a corporation, Appellee.
No. 94-425.
District Court of Appeal of Florida, Fifth District.
March 3, 1995.
Stewart G. Greenberg, P.A., Miami, and Russo & Talisman, P.A., Coconut Grove, for appellants.
Robert K. Rouse, Jr., Smith, Schoder, Rouse & Bouck, P.A., Daytona Beach, for appellee.
COBB, Judge.
This appeal concerns the refusal of the trial court to give the following requested jury instruction:
If an insurance company undertakes its own investigation, it must perform that investigation with reasonable diligence, and the company will be viewed as having all of the knowledge which that diligent investigation might have turned up. Fecht v. Makowski, 172 So.2d 468, 471 (Fla. 3d DCA 1965).
We agree with the trial court's rejection of the above instruction and, accordingly, affirm the judgment below.
The principal issue at trial was whether or not an insurance carrier, Independent Fire Insurance Company, was entitled to rescind an automobile insurance policy issued to Lyle and Pegg Brigham based upon a misrepresentation on their application. The policy covered the two Brighams and their son, Robert, as drivers. Insurance representatives for Independent asked the Brighams, at the time of their application in 1988, whether they or their son had been involved in any accidents or received citations during the preceding five years. They responded that neither had been so involved, but they were unsure as to their son, Robert. According to the Brighams, the insurance representative told them not to worry because "the company checks it out." Thereupon, the question was *744 answered "no" on the application form and Lyle Brigham signed it.
Evidence was presented at trial by Independent that it had ordered a Florida motor vehicle report on all three Brighams, which covered the fifteen months they had been in Florida. Thus, based on the fifteen month report and the representations on the application, the policy was issued. Thereafter, in 1991, Robert Brigham was involved in a traffic accident resulting in the deaths of Justino and Josefina Vega.
After receiving a demand from the estates of the Vegas, Independent engaged in further investigation and discovered that Robert Brigham had been involved in an accident and had received two traffic citations in Michigan prior to moving to Florida, all incidents occurring within five years of the application for the Independent policy. Consequently, Independent filed a declaratory judgment action for rescission alleging a material misrepresentation on the application which would have prevented it from issuing the policy. The estates of the deceased Vegas were joined in the action as third party beneficiaries of the policy who had sued Independent's insured, Robert Brigham.
The trial court apparently impaneled a jury to resolve factual questions relating to any misrepresentation by the Brighams and the materiality of any such misrepresentations in the election by Independent to issue the policy. At trial, the trial judge apparently refused the requested instruction based on a determination that the routine request for a Florida motor vehicle report on Robert Brigham, which constituted a fifteen month period, did not constitute "an independent investigation" by Independent of Brigham's five year record, and therefore, there was no evidence that Independent relied on that search as opposed to the representations in the application regarding the five year period. After a jury verdict favorable to Independent, the trial court issued its declaratory judgment granting rescission of the policy based upon misrepresentation by the Brighams and detrimental reliance by Independent. The personal representatives of the estates of the Vegas filed the instant appeal.
The argument advanced by the Vegas is that since Independent undertook "to conduct an independent investigation of the three Brighams' driving records" it was charged with "all knowledge it might have obtained had it pursued the inquiry to the end with all diligence and completeness." In other words, since Independent obtained the fifteen month Florida record of Robert Brigham, it should have obtained the rest of his preceding five year record from Michigan and is chargeable with the knowledge which such an investigation, if diligently performed, would have produced. In seeking an instruction to the jury to this effect, the Vegas relied upon the Third District opinion in Fecht.
The Fecht case dealt with the concept of imputed knowledge. In that case, the Makowskis, who owned a waterfront motel, signed an application for insurance stating that they did not own a motor powered boat. In fact, they did own such a boat and a motel guest was subsequently injured while using it. The insurance company denied coverage, and its position prevailed before the trial court. The appellate court reversed, finding that the insurer had "amply demonstrated that it did not rely upon the application by virtue of the fact that it twice conducted its own inspection of the property independent of the agent and the statements attributed to the assured in the application." Fecht at 471. The opinion does not reveal whether or not the boat was present on the motel property at the time of these inspections. The Fecht opinion turned on the issue of detrimental reliance, and the evidence of record convinced the Third District that the insurance company relied on its own two visits to the motel premises rather than on the statements in the application. The court stated:
The general proposition that the insurer is charged with all knowledge that it might have obtained had it pursued the independent inquiry to the end with reasonable diligence and completeness,1 requires us to attribute knowledge of the ownership of the motor-powered boat to the insurer.
1 Columbian Nat. Life Ins. Co. v. Lanigan, 154 Fla. 760, 19 So.2d 67 (1944).
*745 Fecht at 471. The above statement of law in Fecht is not warranted by the Lanigan opinion, which it cited as support therefor. In Lanigan, the misinformation or insufficiency of information on an application for life insurance was found to be the fault of the company's medical examiner who interviewed the applicant and not the fault of the applicant himself, who acted in good faith in referring the company representative to hospital records and various treating physicians. The insuring company in Lanigan clearly relied solely on information imparted to it by its own medical examiner and on its own independent investigation.
The Florida Supreme Court addressed the issue now before us in Johnson v. Life Ins. Co. of Georgia, 52 So.2d 813 (1951). In that case, a life insurance policy contained a provision limiting the company's liability thereunder
if within two years prior to the date of issue of this policy the insured has received ... medical or surgical treatment or attention, and the insured or any claimant under the policy fails to show that the condition occasioning such treatment or attention was not of a serious nature or was not material to the risk unless reference to such ... medical or surgical treatment or attention is endorsed on this policy by the company; provided, however, that the liability of the company will not be limited because of the absence of endorsement referring to any information which was disclosed in a written application for this policy.
The policy issued in July of 1949. At that time the insured was undergoing medical treatment, which he did not divulge on his application, and which eventuated in a diagnosis of pulmonary tuberculosis. He died from this affliction in March, 1950. The controverted evidence at trial established that the company's agent had actual knowledge of the insured's tubercular condition two months after the policy issued, and, even with that knowledge, continued to collect the policy premiums.
The Florida Supreme Court held that the admitted facts established a waiver by the company, as a matter of law, of the provisions of the policy upon which the company relied in refusing payment based on misrepresentation. The court stated:
[I]t is ... well settled in insurance law that, when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof.
52 So.2d at 815. The court found that the agent's knowledge that the insured was suffering from tuberculosis only two months after the date of the issuance of the policy should have excited the company's attention and prompted it to inquire further as to the existence of facts justifying a forfeiture of the policy. The court declared that such a deliberate disregard of suspicious information was the "legal equivalent of knowledge"  i.e., constructive notice. The facts constituting constructive notice in Johnson border on actual knowledge. They are a far cry from the rule stated in Fecht and advocated by the plaintiffs below that any investigation undertaken by the company to check out the truthfulness of an application, no matter how minimal or how routine, and irrespective of the amount of information divulged by that investigation, means that the insurer can no longer rely on the truthfulness of the application. Such a rule of law discourages any independent investigations by insurance companies and encourages applicants to lie; both results evincing poor social policy and contrary, as we read Johnson, to the rule advocated by the Florida Supreme Court. See also Talley v. National Standard Life Ins. Co., 178 So.2d 624 (Fla. 2d DCA 1965). The Florida Supreme Court case applicable to our facts is Johnson. We reject the rule of law set forth in Fecht, as reflected by the appellants' proposed jury instruction, and certify conflict with that opinion.
AFFIRMED.
W. SHARP, Judge, concurs.
GRIFFIN, J., concurs in part, dissents in part, with opinion.
GRIFFIN, Judge, concurring in part; dissenting in part.
I agree with the first part of Judge Cobb's opinion in which he articulates the distinction *746 between this case and such cases as Fecht. In Fecht, the insurer had undertaken a physical inspection of the insured premises, on which it was held to have relied. In this case, the insurer merely elected to obtain a copy of Florida's DMV report. The report told the insurer nothing that a reasonable insurer would have relied upon in concluding all three of the Brighams had clean driving records for the previous five years. Nothing in the DMV report put the insurer on notice of a prior bad driving record  or even suggested it. At most, it suggested there might be someplace else it could look to verify the insureds' representations, which is not at all the same thing. Although some of the language in Fecht is a bit broad, this is not a Fecht case and I do not believe that this case conflicts with Fecht.
I agree with Judge Cobb that the law should not discourage a diligent investigation by insurers. By the same token, neither should the law provide an escape hatch for an insurer whose investigation is so inept, or whose underwriting procedures are so ill conceived, that the decision to insure actually rests on its own negligent (or greedy) shoulders rather than on any representation made by the applicant. There is room in Florida jurisprudence for the principle articulated in Fecht, and, in my mind, Security Life & Trust Co. v. Jones, 202 So.2d 906 (Fla. 2d DCA 1967), cert. denied, 209 So.2d 672 (Fla. 1968) is a good example. There, the insurer undertook an investigation of the applicant's medical history but, after receiving an ambiguous report from the applicant's physician, it elected to be satisfied with its insured's denials and its own tests. Having been put on notice of a possibly adverse medical condition, it can be fairly said, as did the Second District Court of Appeal, that whether the insurer had ceased to rely on the representation of the applicant and instead elected to rely on its own investigation can be a jury question.