[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**December 13, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 05-12948
Non-Argument Calendar

_____

D. C. Docket No. 04-00181-CV-J-20-MMH

DIANE JOSEPH, individually
and as surviving spouse of
Gerald O. Joseph,

Plaintiff-Counter-
Defendant-Appellant,

versus

ZURICH LIFE INSURANCE COMPANY OF AMERICA,
a foreign corporation,

Defendant-Counter-
Claimant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 13, 2005)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

In this diversity action arising out of a life insurance policy, Plaintiff-Appellant Diane Joseph appeals the district court's order granting summary judgment in favor of Defendant Zurich Life Insurance Company of America ("Zurich"). After review, we affirm.[1]

## I. FACTS

In January 2001, Diane Joseph's husband, Gerald O. Joseph, applied by telephone for life insurance from Zurich. During the telephone call, Mr. Joseph answered various questions about his medical history. Mr. Joseph disclosed to Zurich that he had been diagnosed with high blood pressure seven years before, for which he took medication. Mr. Joseph did not disclose, however, that in 1999 he had suffered a stroke and was hospitalized for several weeks. Mr. Joseph also indicated that his last physical in January 2000 had yielded "normal results" and provided the names of his treating physicians.

The Zurich employee who conducted the telephone interview, prepared an application based on Mr. Joseph's answers and sent it to Mr. Joseph for his

---

[1] We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Miller v. Scottsdale Ins. Co., 410 F.3d 678, 680 (11th Cir. 2005). We affirm the grant of summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c)).

signature.  Specifically, the application that Mr. Joseph signed stated that "the answers made in all parts of this application are true and complete" and that his answers "shall be the basis for any insurance that may be issued."  The application then asked questions about his medical health.  The application instructed that Mr. Joseph was to provide complete details in the Remarks section for any "yes" answers, as follows:

> For any "yes" answers, please provide complete details in the Remarks section that follows.  If the information is medical in nature, include: diagnosis, treatment, and medications, date of occurrence, duration, and current status, all names, addresses, and phone numbers of doctors, hospitals, and medical facilities.

Question 2 on the application asked Mr. Joseph whether within the last ten years he had been diagnosed or treated for a list of medical conditions, which included: "high blood pressure; stroke; heart, lung, kidney, or liver disease; diabetes; cancer or a tumor; colon disorder; back or spinal disorder; seizure or nervous disorder; alcohol or drug dependency; immune system disorder; digestive or genitourinary disorder; mental disorder or depression."  Mr. Joseph responded yes to question 2.  However, in the Remarks portion of the application with regard to question 2, Mr. Joseph provided details about his high blood pressure but did not mention his 1999 stroke or provide any details about his stroke.[2]  Mr. Joseph did

---

[2] As to his blood pressure, Mr. Joseph stated that he had high blood pressure that was diagnosed over two years ago, that he had been taking Avipro and Bedatol for his high blood

3

not disclose that his 1999 stroke had resulted in some paralysis and left-side weakness, had caused him to be hospitalized for five days and then had required a week-long stay at a rehabilitation hospital.  Mr. Joseph also failed to disclose that, for the six weeks after his hospitalization, he had received physical, occupational and speech therapy and had required the use of a wheelchair and quad cane.

Question 3 on the application asked whether within the last five years Mr. Joseph had been hospitalized, had any tests or been examined by a doctor, to which Mr. Joseph also answered yes.  Question 3 also asked Mr. Joseph to provide details of each visit to the doctor or hospital.  With regard to question 3, Mr. Joseph stated that he had his last annual physical in January 2000 with normal results.  As to questions 3, Mr. Joseph also did not include in his Remarks any information whatsoever about his 1999 stroke, his above hospitalizations or rehabilitative treatment.

On February 24, 2001, a paramedic nurse sent by Zurich examined Mr. Joseph.  The paramedic nurse, among other things, twice took Mr. Joseph's blood pressure readings, which confirmed that Mr. Joseph's blood pressure was higher than normal.

Mrs. Joseph was present during the medical exam.  In a deposition, Mrs.

---

pressure for seven years, and that his average systolic blood pressure was less than 135 and his average diastolic blood pressure was less than 85.

4

Joseph testified that she had heard her husband tell the paramedic nurse that he had previously suffered a stroke and that the paramedic nurse responded that he looked good for someone who had suffered a stroke. Mr. Joseph's past stroke, however, was not noted in the paramedic nurse's confidential report.

In the paramedic nurse's presence, Mr. and Mrs. Joseph both signed the "Agreement and Authorization" portion of Zurich's application, wherein the Josephs agreed that "[n]o one can accept risks, or make changes to the application or waive the Company's rights," and "no one can accept statements or answers that are not in the application," as follows:

> I/We, herein jointly to be known as I, represent that the statements and answers made in all parts of this application are true and complete to the best of my knowledge and belief. I agree that: 1. All such statements and answers shall be the basis for any insurance that may be issued. 2. No one can accept risks, or make changes to the application, or waive the Company's rights or requirements. Except in Missouri, Oregon and South Carolina, no one can accept statements or answers that are not in the application. . . . .

Thus, under the terms of the application, verbal statements outside the application did not change or supplement the application.

The policy itself contained a provision that stated that Zurich had relied upon the statements in the application, a copy of which was attached and incorporated into the policy, and reserved for Zurich the right to contest the validity of the policy if the application contained a material representation. The

5

policy also provided that only Zurich's president, vice-president, secretary or assistant secretary could change the policy or waive a provision of the policy.

The paramedic nurse witnessed the application, which was then forwarded to Zurich. In March 2001, the application was amended to raise the value of the policy from $100,000 to $200,000. In the amendment, Mr. Joseph affirmed that his earlier representations in his application remained valid. Based on the application, Zurich issued a life insurance policy effective April 1, 2001.

Mr. Joseph died on February 28, 2003, due in part to a stroke. Zurich denied Mrs. Joseph's life insurance claim after it obtained Mr. Joseph's medical records, which revealed the 1999 stroke and hospitalization. Zurich notified Mrs. Joseph that it was rescinding the Policy and tendered her a refund of all premiums paid under the policy. Mrs. Joseph brought this suit for breach of the insurance policy.

## II. DISCUSSION

On appeal, Mrs. Joseph argues that the district court erred in granting summary judgment to Zurich. We disagree and conclude that, under Florida law, the misinformation and omissions in the application preclude recovery under the policy.

Florida Statute § 627.409 sets forth when a misrepresentation or omission in an insurance application prevents recovery under the policy. First, recovery is

6

precluded if the misstatement or omission is "fraudulent or is material to either the acceptance of the risk or to the hazard assumed by the insurer." Fla. Stat. § 627.409(1)(a). Second, recovery is precluded in these circumstances: "If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued a policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss." Fla. Stat. § 627.409(1)(b).[3]

Both Florida provisions apply here to Mr. Joseph's misrepresentations and omissions about the details of his stroke, his paralysis and left-sided weakness, and his hospitalizations and six weeks of rehabilitative treatment. Mr. Joseph's misrepresentations and omissions were clearly material to Zurich's assessment of the risk, and Zurich undisputedly would not have issued the policy as written had it know the true facts.

---

[3] When, as here, the insurance application contains "knowledge and belief" language – that is, a provision stating that the information is accurate to the best of the applicant's knowledge and belief, the insurer must show that the insured intentionally made the misstatement or omission to rescind the contract. See Green v. Life & Health of Am., 704 So.2d 1386, 1390-92 (Fla. 1998). The insurer may make this showing on summary judgment by establishing that there were underlying facts known to the applicant that "clearly contradicted the information on the application. See, e.g., Mims v. Old Line Life Ins. Co. of Am., 46 F. Supp. 2d 1251, 1255 (M.D. Fla. 1999). Mr. Joseph's 1999 stroke and subsequent hospitalization clearly contradicted his assertions in the application that his only treatment within the last ten years had been for high blood pressure and that his only visit to a doctor or hospital in the last five years had been to his last annual physical.

Mrs. Joseph contends that Zurich was put on constructive notice that the information in the application was incomplete or incorrect by Mr. Joseph's disclosure that he suffered from high blood pressure and had been taking medication for seven years to control it, in conjunction with the fact that he had two high blood pressure readings during his medical examination. Mrs. Joseph argues that this constructive notice triggered a duty on Zurich's part to inquire further. We disagree. The facts that Mr. Joseph was being treated for high blood pressure and had high blood pressure readings during the exam were legally insufficient to put Zurich on constructive notice that Mr. Joseph had been hospitalized for over two weeks for his prior stroke, had had some paralysis and left-sided weakness and had rehabilitative therapy for the stroke for over six weeks.[4] See Swift v. N. Am. Co. for Life Ins. & Health Ins., 677 F. Supp. 1145, 149-50 (S.D. Fla. 1987) (holding that insurer is entitled to rely upon applicant's disclosure of medical treatment for flu and need not investigate for other medical conditions); Shelby Life Ins. Co. v. Paolasini, 489 So.2d 89, 91 (Fla. Dist. Ct. App.

---

[4] The district court also excluded Mrs. Joseph's expert witness, an insurance law professor who sought to testify that Zurich had been negligent in failing to seek Mr. Joseph's medical records after it discovered his history of high blood pressure. The district court concluded that the expert, who was neither an insurance underwriter nor a medical doctor, was not qualified to offer such an opinion. We cannot say that the district court abused its discretion in refusing to qualify Joseph's expert. See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003) (stating that the Court of Appeals reviews a district court's decision to admit or exclude an expert witness for abuse of discretion, deferring to the district court's ruling unless it is "manifestly erroneous").

1986) (same). This is especially so in this case where Mr. Joseph's application stated that, but for his high blood pressure, he was otherwise in good health.

We also reject Mrs. Joseph's contention that Mr. Joseph's statement to Zurich's nurse paramedic that he had suffered a stroke in the past creates an issue of fact about Zurich's knowledge and that Zurich therefore had a duty to inquire further and obtain his medical records. Because the Agreement in the application clearly prohibited anyone from accepting verbal statements not in the application, Mr. Joseph's statement to the nurse paramedic, even if made, is insufficient to change or supplement the application.

Generally, Florida insurance law imputes knowledge of an insurer's agent to the insurer. See Hardy v. Am. S. Life Ins. Co., 211 So.2d 559, 560 (Fla. 1968) (holding that "relevant knowledge of an insurer's agent of material facts concerning the health of the prospective insured is imputable to the insurer . . ."). However, under Florida law "parties are free to 'contract-out' or 'contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract." Green v. Life & Health of Am., 704 So.2d 1386, 1390 (Fla. 1998) (quotation marks and citation omitted). This is true "even though the resulting contract is improvident as to the insured." Id. (quoting Couch on Insurance 3d, § 17:2 (1997)).

9

The Florida insurance code is silent regarding whether verbal statements may change or expand an insurance application; therefore, the parties were free to address this topic in their contract. See Griffin v. Am. Gen. Life & Accident Ins. Co., 752 So.2d 621, 624 (Fla. Dist. Ct. App. 2000) (noting that, because Florida insurance code did not address situation when insured's health worsens after completing application but before the policy is issued, parties were free to address the contingency in the insurance contract). The provisions in Mr. Joseph's application unambiguously preclude anyone, which includes the nurse paramedic, from changing the information in Mr. Joseph's application or accepting additional information not already in the application. The application also expressly states that insurance will be issued based solely on the information contained in the application.[5] Florida insurance law also recognizes that an agent cannot waive a provision of an insurance contract or bind the insurer when the insurance application makes clear that the agent has no authority to do so. See Almerico v.

---

[5] Although Mrs. Joseph does not argue that the provisions at issue are inconsistent with public policy, she does emphasize that Florida insurance law places high importance on the role a medical examiner may play in the insurance application process, citing Columbian Nat'l Life Ins. Co. v. Lanigan, 19 So.2d 67 (Fla. 1944). Lanigan does not support a conclusion that the provisions at issue here are against public policy. Lanigan stands for the proposition that, when a medical examiner completes an insured's application for him, the insured should be able to rely on the medical examiner to report all information material to the insurer. Here, the nurse paramedic did not fill out Mr. Joseph's application and in fact was precluded from doing so. Nothing in Lanigan suggests that the parties cannot agree to prohibit a medical examiner from completing or amending an insured's application.

RLI Ins. Co., 716 So.2d 774, 781 (Fla. 1998) (holding that "an agent cannot bind an insurer by contracting to issue a policy when the written application expressly states that the agent cannot so contract"); Murphy v. John Hancock Mut. Life Ins. Co., 213 So.2d 275, 276 (Fla. Dist. Ct. App. 1968) (holding that an agent could not bind the insurer by contracting to issue an insurance policy when the application expressly stated that the agent could not so contract).

For all of these reasons, we affirm the district court's grant of summary judgment in favor of Zurich.

AFFIRMED.