# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**RESTORATION CONSTRUCTION, LLC** a/a/o
**ANGEL PENNA,** and **RUTH HARGREAVES,**
Appellant,

v.

**PEOPLE'S TRUST INSURANCE COMPANY,**
Appellee.

No. 4D2023-0246

[May 22, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gregory M. Keyser, Judge; L.T. Case No. 50-2019-CA-005891-XXXX-MB.

Geoffrey B. Marks of The Law Offices of Geoffrey B. Marks, Coral Gables, for appellant.

David C. Borucke of Cole, Scott & Kissane, P.A., Tampa, for appellee.

PER CURIAM.

*Affirmed.*

CONNER and ARTAU, JJ., concur.
WARNER, J., dissents with opinion.

WARNER, J, dissenting.

Appellant Restoration Construction appeals a summary judgment in favor of People's Trust Insurance Company (PTI) in its breach of contract action brought as the assignee of People's Trust's insureds. The trial court concluded that the policy had a preferred contractor endorsement which allowed PTI to use its preferred contractor to make the repairs, and that the insureds breached the policy, and thus forfeited the policy benefits, by using Restoration to make the repairs.

I dissent from the majority affirmance for two reasons. First, the policy did not allow for a forfeiture of benefits under the circumstances of this

case.  Second, PTI waived its right to use its preferred contractor because PTI knew of the insureds' contract with Restoration and took no action to follow through with its own obligation to complete the repairs.

The insureds held a policy with PTI, which included a preferred contractor endorsement allowing PTI to elect to use its preferred contractor to repair a covered loss to the insureds' property.  The insureds suffered a water leak and immediately contracted with Restoration to provide mitigation and reconstruction repairs, with Restoration receiving an assignment of benefits.  Restoration commenced the repairs.  After the insureds had signed Restoration's contracts, the insureds also notified PTI, and its adjuster inspected the property after the mitigation was complete.  PTI received a copy of Restoration's contract with the insureds.  Very soon thereafter, Restoration began the reconstruction repairs.  Within ten days of the inspection, PTI accepted the loss as covered and sent a letter notifying the insureds of their option to use its preferred contractor.  PTI informed the insureds that its adjuster or its contractor would contact them to start the process, but neither contacted the insureds as promised.

After receiving the letter, Restoration's attorney sent PTI a letter demanding payment for Restoration's mitigation services and including another copy of both the mitigation contract and the reconstruction contract.  PTI paid for the mitigation services.

A few weeks later, PTI followed up with the insureds asking them to submit a sworn proof of loss.  The letter did not mention PTI's prior acceptance of coverage or that PTI was exercising its option to use its preferred contractor.  Instead, the claims adjustor wrote, "Your response to PTI's request is vital towards expediting the completion of PTI's claim investigation."  The insureds filed a sworn proof of loss a week later.

After reviewing the proof of loss, PTI elected to seek an appraisal.  PTI's appraiser inspected the property, finding it fully repaired.  The insureds' representative and PTI's appraiser settled on the amount of the loss, which PTI accepted.  The report sent to the claims adjuster noted that the property had already been repaired.  Months later, PTI sent the insureds a copy of the appraisal award and informed them that it was sending a check for the award amount to its preferred contractor.  When the insureds' representative informed PTI that the repairs were complete and payment should be made to Restoration, PTI refused, causing Restoration to file suit.  PTI's answer claimed that the insureds had breached the contract, forfeiting any benefits, by failing to allow PTI to use its preferred contractor to make repairs.

2

The parties filed cross motions for summary judgment. PTI claimed the insureds breached the preferred contractor endorsement, which forfeited Restoration's right to compensation for the loss as the insureds' assignee. Restoration claimed that the insurance contract was not breached, and as PTI had agreed to the amount of the loss, PTI was obligated by the policy provisions to pay that amount. In addition, Restoration also argued that PTI had not properly exercised its option because PTI never followed through with contacting the insureds, nor did PTI reject Restoration's contract and repairs.

The trial court granted summary judgment for PTI on the policy provisions. The court also concluded that Restoration had failed to plead that PTI had waived compliance with the preferred contractor endorsement, or, alternatively, had failed to prove that PTI knew that Restoration had completed the repairs. From the summary judgment, Restoration files this appeal.

The standard of review for summary judgment is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Review of a trial court's interpretation of an insurance contract is also de novo. *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017).

**The Insurance Contract**

PTI's insurance policy Preferred Contractor Endorsement provided that, for a small reduction in premium ($89), PTI had the option of using its own captive contractor, Rapid Response, to perform the repairs on any covered loss. Those provisions included obligations by the insureds to cooperate with the contractor. The endorsement changed several provisions of the policy as to "Duties after Loss" and also provided what would happen if the insureds did not allow PTI to use its preferred contractor:

SECTION 1- CONDITIONS

C. Duties After Loss

5. a. and b, are deleted and replaced by the following for losses other than sinkhole:

5. Protect the property from further damage. If repairs to the property are required, or if the services of a contractor are required to protect the property from further damage, "you" must:

a. Notify "us" before authorizing or commencing the repairs or the services so "we", at our option, may select Rapid Response Team, LLC" to make covered repairs or perform the services; and

b. Keep an accurate record of repair expenses;

**If "you" do not notify "us" prior to authorizing or commencing** the Reasonable Repairs[1] as described in SECTION 1-PROPERTY COVERAGE E. Additional Coverages, or **the repairs or services as described in the SECTION I - CONDITIONS - D. Loss Settlement and allow "us" at our option to select Rapid Response Team, LLC for such** Reasonable Repairs, **or such repairs or services**, **"our" obligation for the Reasonable Repairs, or the repairs or services is limited to the lesser of the following**:

a. The reasonable cost "you" incur for necessary Reasonable Repairs, or for repairs or services; or

b. The amount "we" would have paid to Rapid Response Team, LLC selected by "us" for necessary Reasonable Repairs, repairs or services.

(Emphasis and footnote added). The policy thus provides that if the insureds does not notify PTI of a loss prior to executing a contract with another contractor, preventing PTI from using its preferred contractor to effectuate the repairs, PTI is only liable for the lesser of either the amount which the insureds actually paid for mitigation and reconstruction, or the amount which PTI would have paid its preferred contractor. Thus, PTI retains the preferred contractor endorsement's benefit by limiting its loss payment to the discounted rates that PTI would have paid its preferred contractor. Clearly, the failure to use the preferred contractor is not a breach of contract, because the contract contemplates that exact situation. The contract merely limits PTI's obligation in that situation. Without a breach, forfeiture is not the remedy.

PTI relies upon *People's Trust Insurance Co. v. First Call 24/7, Inc.*, 333 So. 3d 1144 (Fla. 4th DCA 2022), as authority that the insureds breached the contract, thus forfeiting the policy benefits. In *First Call*, we agreed

---

[1] Reasonable Repairs was an Additional Coverage under Section I – Property Coverages -Additional Coverages. It covered necessary repairs to protect the property after a loss. PTI paid Restoration for the mitigation repairs.

4

with the Third District's analysis of PTI's preferred contractor endorsement in *People's Trust Insurance Co. v. Tosar*, 332 So. 3d 552 (Fla. 3d DCA 2021). *First Call*, 333 So. 3d at 1146–47. Both cases similarly addressed PTI's right to repair preferred contractor endorsement, and we and the Third District concluded that the insureds breached the policy provisions, resulting in a forfeiture. *First Call*, 333 So. 3d at 1147; *Tosar*, 332 So. 3d at 560. However, both cases are distinguishable.

In *First Call*, the homeowner suffered a water loss and notified the insurer. *Id.* at 1145. After inspection, the insurer accepted coverage and timely elected to use its preferred contractor to complete repairs. *Id.* The homeowner used the plaintiff contractor to make emergency repairs. *Id.* The insurer paid the plaintiff and requested that the homeowner complete a work authorization so that its preferred contractor could commence the remaining restoration services. *Id.* at 1245–46. The insurer asked the homeowner to complete the work authorization three times, but she did not do so. *Id.* at 1146. Instead, she used the plaintiff contractor to complete the restoration. As a result, the insurer told her that she was in breach. *Id. First Call* concluded that once PTI had exercised its option to repair, the insured was obligated to comply under the terms of the policy, which she refused. The opinion does not indicate that the insured had entered into a contract for reconstruction repairs prior to PTI's election of its option to use its own contractor.

Similarly in *Tosar*, the insured suffered a loss, and PTI elected its option to repair, going to an appraisal. 332 So. 3d at 557. *After the appraisal*, the insured hired his own contractor to make the repairs. *Id.* at 558. PTI refused payment to the contractor, and the insured filed suit for the appraisal award. The Third District reversed a summary judgment in the insured's favor, concluding that the insured had breached the contract. Once PTI had elected the option to repair, the insured was obligated to sign the work authorizations and pay the deductible. But in *Tosar*, the insured had not engaged the other contractor until well after PTI had elected its option and proceeded with the appraisal.

Here, on the other hand, the insureds did not notify PTI prior to authorizing Restoration to make the reconstruction repairs. The Restoration contract stated that it was irrevocable. Thus, by signing the contract, the insureds brought themselves within the contract provision which limited PTI's financial obligation:

> If "you" do not notify "us" prior to authorizing or commencing the Reasonable Repairs. . . . or the repairs or services as described in the SECTION I – CONDITIONS – D. Loss

Settlement and allow "us" at our option to select Rapid Response Team, LLC for such Reasonable Repairs, or such repairs or services, "our" obligation for the Reasonable Repairs, or the repairs or services is limited to the lesser of the following:

> a. The reasonable cost "you" incur for necessary Reasonable Repairs, or for repairs or services; or

> b. The amount "we" would have paid to Rapid Response Team, LLC selected by "us" for necessary Reasonable Repairs, repairs or services.

Through the appraisal which PTI demanded, that reasonable cost and what it would pay Rapid Response for the repairs was determined and agreed to by PTI. PTI sent the insureds a letter informing them that it was sending a check for that amount to its preferred contractor.

In construing a contract, "[t]he contract should be reviewed as a whole and all language given effect" and "'[a]n interpretation which gives a reasonable meaning to all provisions . . . is preferred to one which leaves a part useless or inexplicable.'" *PNC Bank, N.A. v. Progressive Emp. Servs. II*, 55 So. 3d 655, 658 (Fla. 4th DCA 2011). *First Call*'s application to this case would completely eliminate from the contract the beginning condition to the preferred contractor duty after loss clause: "If "you" do not notify "us" prior to *authorizing or commencing* [the repairs]." The insurance policy specifically contemplates the situation where the insured proceeds with the repairs prior to notifying PTI and limits PTI's liability under the policy to what it would have paid its preferred contractor. Yet, by holding that the insureds **breached** the contract in this case resulting in a forfeiture, even though the insureds came within the condition of the policy, this provision is read out of the policy altogether. This does not comport with contract law.

"As a general rule in Florida, forfeitures of insurance policies are not favored, especially when the event that gives rise to the insurer's liability has occurred." *Boca Raton Cmty. Hosp., Inc. v. Brucker*, 695 So. 2d 911, 912 (Fla. 4th DCA 1997) (quoting *LeMaster v. USAA Life Ins. Co.*, 922 F. Supp. 581, 585 (M.D. Fla. 1966)). The law abhors forfeiture of insurance coverage. *Am. Integrity Ins. Co. v. Estrada*, 276 So. 3d 905, 914 (Fla. 3d DCA 2019). PTI is demanding a forfeiture of its policy when its own provisions allow payment. I would hold that the policy required PTI to pay the appraisal amount to Restoration, as assignee of the insureds based

upon the foregoing contractual provision limiting the insureds' recovery to what PTI would pay its preferred contractor.

## Waiver

Even if the policy provisions were to apply, I would also conclude that that material issues of fact remain as to whether PTI had waived the option to use its contractor to make the repairs. The trial court found that waiver was not pled, but I disagree. The complaint alleged that the insureds had complied with all policy provisions or, alternatively, that PTI had waived and was estopped from asserting them. Further, in reply to PTI's affirmative defense of the preferred contractor endorsement, Restoration alleged that PTI had waived any provisions which would result in a forfeiture. These allegations sufficiently alleged waiver of the policy provision.

I disagree with the court's conclusion that there was no evidence that PTI knew of Restoration's contracts or that the repairs had been made by it. Waiver is the intentional and voluntary relinquishment of a known right or conduct which warrants an inference of the relinquishment of a known right. *Aberdeen Golf & Country Club v. Bliss Constr., Inc.*, 932 So. 2d 235, 244 (Fla. 4th DCA 2005)). However, waiver may also "be inferred from a deliberate disregard of information sufficient to excite attention and call for inquiry as to the existence of facts by reason of which a forfeiture could be declared." *See Johnson v. Life Ins. Co. of Ga.*, 52 So. 2d 813, 815 (Fla. 1951).

Record evidence showed that PTI was furnished with Restoration's reconstruction contract when PTI's adjuster first visited the property and saw that mitigation repairs had been completed. Further, even though PTI stated that it was electing to use its preferred contractor, a disputed issue of fact remains as to whether PTI ever properly exercised that option. It did not provide the insureds with a work authorization for its contractor, nor follow through with its representations in the letter that either its adjuster or its preferred contractor would contact the insureds within days, nor make any other steps necessary to move forward with repairs. Shortly after PTI's letter to the insureds allegedly electing its option, the insureds again furnished the contract with Restoration to PTI, and PTI actually paid Restoration for the mitigation costs. And when PTI received the sworn proof of loss a month later, after the repairs had been completed, PTI elected to proceed with an appraisal of the loss. PTI's appraiser visited the property, seeing that all repairs were completed. The parties agreed to the amount of the appraisal, and PTI accepted the amount. Two months

later it sent a check for the full amount to its preferred contractor and only then refused to pay that amount to Restoration for the work.

"The rule on summary judgment is that '[i]n determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor.'" *Patient Depot, LLC v. Acadia Enters., Inc.*, 360 So. 3d 399, 408 n.4 (Fla. 4th DCA 2023) (quoting *Brevard Cnty. v. Waters Mark Dev. Enters., LC*, 350 So. 3d 395, 398 (Fla. 5th DCA 2022). The foregoing facts are sufficient to raise a genuine issue of material fact as to whether PTI waived its option to use its preferred contractor.

I would reverse and remand for further proceedings.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***